UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| -------------------------------------------------- | X | |
| IN RE: YASMIN AND YAZ | : | 3:09-md-02100-DRH-PMF |
| (DROSPIRENONE) MARKETING, | : | MDL No. 2100 |
| SALES PRACTICES AND RELEVANT | : | Judge David R. Herndon |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | |
| -------------------------------------------------- | : | FIRST AMENDED COMPLAINT |
| | : | AND JURY DEMAND |
| ERIN MARTINO | : | Civil Action No.: 3:10-cv-13797-DRH-PMF |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| BAYER HEALTHCARE | : | |
| PHARMACEUTICALS INC., | : | |
| BAYER SCHERING PHARMA AG, | : | |
| BAYER CORPORATION, BAYER | : | |
| HEALTHCARE, LLC, BAYER | : | |
| HEALTHCARE AG and | : | |
| BAYER AG | : | |
| | : | |
| Defendants. | : | |
| | : | |
| -------------------------------------------------- | X | |

*Plaintiff has amended her complaint to add Defendants Bayer Corporation, Bayer Healthcare, LLC, Bayer Healthcare, AG and Bayer, AG.  Paragraphs 2, 3, 6, 12, 14, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 45, 49, 50, 74, 75, 76, 78, 80, 83, 84, 86, 88, 89, 91, 92, 93, 97, 109, 110 and 111 have been amended as follows:*

## **FIRST AMENDED COMPLAINT**

Plaintiff Erin Martino, an individual, files this FIRST AMENDED COMPLAINT

seeking judgment against Defendants Bayer Healthcare Pharmaceuticals, Inc., Bayer Schering

Pharma AG, Bayer Corporation, Bayer Healthcare, LLC, Bayer Healthcare AG and Bayer AG

for injuries and damages caused by her ingestion of Yaz®, (generically as drospirenone and ethinyl estradiol) a combination oral contraceptive prescription medication and, in support thereof, states and alleges as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff Erin Martino is a resident and citizen of Houston, Texas, located in Harris County.

2.      Plaintiff Erin Martino was prescribed, purchased and ingested Yaz® (herein after Yaz®/Yasmin®), and while using Yaz®/Yasmin® suffered and was diagnosed with a deep vein thrombosis on or about January 30, 2009, as a direct and proximate result of using Yaz®/ Yasmin®, which was designed, developed, marketed, advertised and distributed by Defendants herein.

3.      Plaintiff Erin Martino was prescribed, purchased and ingested Yaz®/Yasmin®, and while using Yaz®/Yasmin® suffered and was diagnosed with a pulmonary embolism on or about January 31, 2009, as a direct and proximate result of using Yaz®/Yasmin®, which was designed, developed, marketed, advertised and distributed by Defendants herein.

4.      Plaintiff alleges an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

5.      Defendant Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

6.      At all relevant times, Defendant Bayer Corporation was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third

parties or related entities, its products, including the prescription drug Yaz®/Yasmin®. Upon information and belief, Defendant Bayer Corporation is the sole member of Bayer Healthcare, LLC, which owns one hundred percent (100%) of Schering Berlin, Inc., which owns one hundred percent (100%) of Defendant Bayer Healthcare Pharmaceuticals, Inc.  As such, Defendant Bayer Corporation is a parent of Defendant Bayer Healthcare Pharmaceuticals, Inc. At all relevant times, Defendant Bayer Corporation conducted and sustained regular business in Texas by selling and distributing its products in Texas and engaged in substantial commerce and business activity in Texas.

7.     Defendant Bayer Healthcare Pharmaceuticals, Inc., is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey, 07470. Bayer Healthcare Pharmaceuticals, Inc. was created by the integration of Bayer Healthcare and Berlex Laboratories (formerly known as Berlex Laboratories, Inc.). Defendant Bayer Healthcare Pharmaceuticals, Inc. is the U.S. based pharmaceuticals unit of Schering Berlin, Inc. and is a division of Bayer AG.

8.     Defendant Bayer Healthcare Pharmaceuticals, Inc. is a corporate successor to Berlex Laboratories, Inc. (Berlex), which was formerly known as Berlex, Inc., and as such is obligated for its predecessor's liabilities. Berlex was formally engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling directly and indirectly through third parties or related entities, its products, including the prescription drug Yaz®/Yasmin®. At all relevant times, Berlex Laboratories, Inc. conducted and sustained regular business in Texas by selling and distributing its products in Texas and engaged in substantial commerce and business activity in Texas.  As a

result of the acquisition, Defendant Bayer Healthcare Pharmaceuticals, Inc. is obligated for its predecessor's liabilities.

9.     At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz®/Yasmin®. At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted and sustained regular business in Texas by selling and distributing its products in Texas and engaged in substantial commerce and business activity in Texas.

10.     Defendant Bayer Healthcare Pharmaceuticals, Inc. is the holder of the approved New Drug Application ("NDA") for Yaz®.

11.     Defendant Bayer Healthcare Pharmaceuticals, Inc. is the holder of the approved New Drug Application ("NDA") for Yasmin®.

12.     Defendant Bayer Healthcare, LLC is a Delaware limited liability company, with its principal place of business at 555 White Plains Road, Tarrytown, New York, 10591. Bayer Healthcare, LLC was involved in the integration of Bayer Healthcare and Berlex Laboratories (formally known as Berlex, Inc.). Defendant Bayer Healthcare, LLC is a resident of New York and is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz®/Yasmin®.

13.     At all relevant times, Defendant Bayer Healthcare, LLC conducted and sustained

regular business in Texas by selling and distributing its products in Texas and engaged in substantial commerce and business activity in Texas.

14.     Defendant Bayer Schering Pharma AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

15.     Defendant Bayer Schering Pharma AG, is a corporate successor of Schering AG.

16.     Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006.

17.     Defendant Bayer Schering Pharma AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh Pennsylvania 15205.

18.     Defendant Bayer Schering Pharma AG, is the current owner of the patent(s) relating to the oral contraceptive YASMIN.

19.     Defendant Bayer Schering Pharma AG, is the current owner of the patent(s) relating to the oral contraceptive YAZ.

20.     Defendant Bayer Schering Pharma AG is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz®/Yasmin®.  At all relevant times, Defendant Schering Pharma AG conducted and sustained regular business in Texas by selling and distributing its products in Texas and engaged in substantial commerce and business activity in Texas.

21.     Upon information and belief, Defendant Bayer Healthcare AG is a company headquartered in Leverkusen, North Rhine-Westphalia, Germany and is the parent/holding company of Defendants Bayer Corporation, Bayer Healthcare, LLC, Bayer Healthcare Pharmaceuticals, Inc. and  Bayer Schering Pharma AG.

22. Defendant Bayer Healthcare AG is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz®/Yasmin®. At all relevant times, Defendant Bayer Healthcare AG conducted and sustained regular business in Texas by selling and distributing its products in Texas and engaged in substantial commerce and business activity in Texas.

23.     Upon information and belief, at all relevant times, Defendant Bayer Healthcare AG exercises dominion and control over Defendants Bayer Corporation, Bayer Healthcare, LLC, Bayer Healthcare Pharmaceuticals, Inc., and Bayer Schering Pharma AG.

24.     Defendant Bayer AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

25.     Defendant Bayer AG is the third largest pharmaceutical company in the world.

26.     Defendant Bayer AG is the parent/holding company of all other named Defendants.

27.     Defendant Bayer AG's headquarters and principal places of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

28.     Upon information and belief, and at all relevant times, Defendant Bayer AG was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, distribute and/or introduced into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz®/Yasmin® for use as a combination oral contraceptive.

29.     At all relevant times, Defendant Bayer AG conducted and sustained regular business in Texas by selling and distributing its products in Texas and engaged in substantial commerce and business activity in Texas.

30.     Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, Bayer Schering Pharma AG, Bayer Healthcare AG and Bayer AG, are collectively referred to herein as 'Bayer" or "Defendants."

31.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

32.     Venue is proper in this District pursuant to Pretrial Order No. 9 which authorized direct filing of cases into MDL No. 2100 in order to eliminate delays associated with transfer of cases and to promote judicial efficiency.   Upon the completion of all pretrial proceedings applicable to this case, pursuant to Pretrial Order No. 9, this case will be transferred to the federal district court in the district where the Plaintiff allegedly was injured by use of Yaz®, Yasmin® or Ocella®, or where the Plaintiff resides at the time of such transfer.

## FACTUAL BACKGROUND
### Nature of Case

33.     Plaintiff Erin Martino brings this case against Defendants for damages associated with her ingestion of the pharmaceutical drug Yaz®/Yasmin® (ethinyl estradiol and drospirenone), an oral contraceptive designed, manufactured, marketed, and distributed by Defendants. Specifically, as a direct result of her use of Yaz®/Yasmin®, Plaintiff Erin Martino suffered and was diagnosed with a deep vein thrombosis and pulmonary embolism in January 2009.

## Bayer's Combined Oral Contraceptives - Yaz/Yasmin and Yasmin

34.     Yaz and Yasmin are birth control pills manufactured and marketed by Defendants. They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component. Together, these steroidal components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

35.     Yaz and Yasmin were approved by the Food and Drug Administration for marketing in 2006 and 2001, respectively.

## Yaz and Yasmin contain a "Fourth Generation" Progestin.

36.     The estrogen component in Yaz and Yasmin is known generically as ethinyl estradiol. The progestin component is known as drospirenone. Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol. Both products contain 3 milligrams of drospirenone.

37.     Yaz and Yasmin are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

38.     Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

39.     During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. levonorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

40.     During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

41.     Yaz and Yasmin contain the same estrogen component, ethinyl estradiol, which has been used in the lower dose birth control pills for decades.

42.     However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin. No other birth control pills contain drospirenone, except for a recently approved generic version of Yaz and Yasmin marketed under the trade name Ocella.

43.     Since drospirenone is new, there is insufficient data available to support its safe

use, particularly compared with second generation progestins. In fact, studies performed prior to FDA approval indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

44.     One possible mechanism of action is that drospirenone interacts differently with ethinyl estradiol compared to other progestins, such that it does not sufficiently counterbalance the clotting effects of estrogen as do other progestins, particularly the second generation progestins.

45.     Another possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high. Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia.   If left untreated, hyperkalemia can be fatal. If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form.  Blood clots in the heart can then lead to heart attacks, or clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.  The diuretic nature of drospirenone also attributes to blood clot formation elsewhere in the body.

46.     Upon information and belief, Defendants knew or should have known that the use of drospirenone in Yaz®/Yasmin® causes arrhythmia, cardiac arrest/heart attack, intracardiac thrombus, pulmonary embolism, deep vein thrombosis, stroke, and/or gallbladder disease.

47.     Indeed, during the brief time that Yaz and Yasmin have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association

with Defendant's products.

48.     In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin. In February 2003, a paper entitled "Thromboembolism Associated With the New Contraceptive Yasmin" was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

49.     In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, more than 50 reports of death among users of Yaz®/Yasmin® were filed with the FDA.  These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, heart attack and stroke in women in their child bearing years, and some reports of death occurred in women as young as 17 years old.  Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yaz®/Yasmin®.

50.     Two recent studies, dated August 2009, have found significantly increased risks associated with Yaz and Yasmin over other types of birth control pills.  The first study assessed the risk of venous thrombosis in women who take hormonal contraception and was conducted on women ages 15-49 with no history of heart disease or any other malignant disease.  A total of 4213 first time venous thrombotic events were recorded during the period of this study, and of these events, 2045 were among current users of hormonal contraception.   The first study

concluded "oral contraceptives with ...drospirenone were associated with a significantly higher risk of venous thrombosis than oral contraceptives with levonorgestrel."  Lidegaard, et. al., Hormonal contraception and risk of venous thromboembolism: national follow-up study, BMJ 2009;339:b2890.  The second study found that Yaz and Yasmin users have twice the risk of a clotting event than users of birth control pills that contain levonorgestrel.  Vandenbroucke, et. al, The venous thrombotic risk of oral contraceptives, effects of estrogen dose and progestogen type: results of the MEGA case-control study. BMJ 2009;339:b2921.

51.     Despite the wealth of scientific evidence, Defendants have not only ignored the increased risk of the development of the aforementioned injuries associated with the use of Yaz®/Yasmin®, but they have, through their marketing and advertising campaigns, urged women to use Yaz®/Yasmin® instead of birth control pills that present a safer alternative.

### Over-Promotion of Yaz/Yasmin

52.     Defendants market Yaz®/Yasmin® as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

53.     However, because Yaz®/Yasmin® contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

54.     For example, prior to its sale to Defendant Bayer in 2006, Defendant Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

55.     In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral

contraceptives, and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin is clinically beneficial. On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

56.    The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

57.    More recently, Defendants advertised that its product Yaz®/Yasmin® was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the more serious condition of premenstrual dysphoric disorder or "PMDD."

58.    Defendants also advertised that Yaz®/Yasmin® contained the added benefit of preventing or reducing acne.

59.    In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz®/Yasmin® for medical conditions beyond the limits of the FDA approval, and adding that "Yaz®/Yasmin® has additional risks because it contains the progestin, drospirenone ... which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

60.    The FDA further warned in its October 3, 2008, letter that Yaz®/Yasmin® "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

61.     Indeed, the FDA felt Defendants' over-promotion was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz®/Yasmin® advertisements regarding acne and premenstrual syndrome.

62.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz®/Yasmin® advertisements to the FDA for advanced screening for the next six years.

### Plaintiffs Use of Yaz/Yasmin and Resulting Injuries

63.     As a result of Defendants' claims regarding the effectiveness, safety, and benefits of Yaz®/Yasmin®, including Defendants' claims regarding Yaz®/Yasmin®'s reduction or prevention of acne, Plaintiff Erin Martino's medical provider prescribed and Plaintiff began using Yaz®/Yasmin® in or about 2008 and she continued using Yaz®/Yasmin® until January 2009, when she suffered and was diagnosed with a deep vein thrombosis and a pulmonary embolism at the age of 28.

64.     As a direct and proximate result of using Yaz®/Yasmin®, Plaintiff Erin Martino sustained serious side effects including, but not limited to, hospitalization for a deep vein thrombosis and pulmonary embolism in January 2009, ongoing physical pain, significant changes in lifestyle, medical, health, incidental and related expenses, medical monitoring and/or medications, and the fear of developing additional health consequences.

65.     Prior to Plaintiff Erin Martino's use of Yaz®/Yasmin®, Defendants knew or should have known that use of Yaz®/Yasmin® created a higher risk of deep vein thrombosis and pulmonary embolism than other oral contraceptives on the market, including but not limited to

second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

66.     Therefore, at the time Plaintiff Erin Martino used Yaz®/Yasmin®, Defendants knew or should have known that the use of Yaz®/Yasmin® created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attack, stroke, gallbladder complications leading to gallbladder removal and even death.

67.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yaz®/Yasmin®, Defendants failed to warn Plaintiff Erin Martino and/or her health care providers of said serious risks before she used the product.

68.     Had Plaintiff Erin Martino and/or her heath care providers known the risks and dangers associated with Yaz®/Yasmin®, she would not have used Yaz®/Yasmin® and would not have suffered from deep vein thrombosis and pulmonary embolism in January 2009.

69.     As a direct and proximate result of her use of Yaz®/Yasmin®, Plaintiff Erin Martino suffered physical injury, including but not limited to, conscious pain and suffering, as a result of her deep vein thrombosis and pulmonary embolism in January 2009.

70.     As a direct and proximate result of Plaintiff Erin Martino's use of Yaz®/Yasmin®, Plaintiff Erin Martino has suffered and will continue to suffer pecuniary losses.

### **CAUSES OF ACTION**

### **COUNT I**

### **Strict Products Liability Defective Manufacturing**

### **As to All Defendants**

71.     Plaintiff Erin Martino incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

72.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yaz®/Yasmin®.

73.     The Yaz®/Yasmin® birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were expected to and did reach the consumers without any alterations or changes.

74.     The Yaz®/Yasmin® birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction when they left the hands of Defendants in that they deviated from design or product specifications, formula or performance standards of the manufacture, or from otherwise identical units manufactured to the same design or product specifications, such that they were unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

75.     As a direct and proximate result of Plaintiff Erin Martino's use of Yaz®/Yasmin® as manufactured, designed, sold, distributed, supplied, marketed, and/or introduced into the stream of commerce by Defendants, as well as Defendants' failure to comply with federal requirements and standards, Plaintiff Erin Martino suffered and will continue to suffer personal injuries, economic and non-economic damages.

76.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with deliberate oppression, wantonness, aggravated or egregious

fraud, and/or intentionally disregarded Plaintiff Erin Martino's safety and rights, so as to warrant the imposition of punitive damages.

## COUNT II

### Strict Products Liability Design Defect

### As to All Defendants

77.    Plaintiff Erin Martino incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

78.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yaz®/Yasmin®. The Yaz®/Yasmin® birth control pills tested, manufactured, designed, marketed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were expected to and did reach the consumer without any alterations or changes.

79.    The Yaz®/Yasmin® birth control pills manufactured and supplied by Defendants were defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or they were more dangerous than an ordinary consumer would expect.

80.    The foreseeable risks associated with the design or formulation of the Yaz®/Yasmin® birth control pills, include, but are not limited to, the fact that the design or formulation of Yaz®/Yasmin® was and is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

81.    Additionally, Defendants advised consumers and the medical community that Yaz®/Yasmin® contained the same safety profile as other oral hormonal birth control pills.

However, Defendants failed to adequately test the safety of Yaz®/Yasmin® versus other oral hormonal birth control pills.

82.     Had Defendants adequately tested the safety of Yaz®/Yasmin® versus other oral hormonal birth control pills and disclosed the results to the medical community or the public, Plaintiff would not have used, and her physician would not have prescribed, Yaz®/Yasmin®.

83.     As a direct and proximate result of Plaintiff Erin Martino's use of Yaz®/Yasmin® as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, and Defendants' failure to adequately test the safety Yaz®/Yasmin® versus other hormonal birth control pills, Plaintiff Erin Martino suffered and will continue to suffer personal injuries, economic and non-economic damages, including pain and suffering.

84.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with deliberate oppression, wantonness, aggravated or egregious fraud, and/or intentionally disregarded Plaintiff's safety and rights, so as to warrant the imposition of punitive damages.

## COUNT III

### Strict Products Liability Defect Due to Inadequate Warning

### As to All Defendants

85.     Plaintiff Erin Martino incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

86.     The Yaz®/Yasmin® birth control pills manufactured and supplied by Defendants were defective due to inadequate warning or instruction and was unreasonably dangerous to the

ordinary user or consumer because Defendants knew or should have known that the product created significant risks of serious bodily harm and death to consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

87.     The Yaz®/Yasmin® birth control pills manufactured and supplied by Defendants were defective due to inadequate post-marketing warning or instruction and were unreasonably dangerous to the ordinary user or consumer because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yaz®/Yasmin®, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

88.     As a direct and proximate result of Plaintiff Erin Martino's use of Yaz®/Yasmin® as manufactured, designed, marketed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Erin Martino suffered and will continue to suffer personal injuries, economic and non-economic damages.

89.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with deliberate oppression, wantonness, aggravated or egregious fraud, and/or intentionally disregarded Plaintiff Erin Martino's safety and rights, so as to warrant the imposition of punitive damages.

## COUNT IV
### Negligence As to All Defendants

90.     Plaintiff Erin Martino incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

91.     Defendants had a duty to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, distribution of Yaz®/Yasmin® into the stream of commerce and/or post-sale surveillance, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events. Defendants also had the duty to ensure that all of its communications to consumers, including Plaintiff Erin Martino and her healthcare providers, were truthful.

92.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, distribution of Yaz®/Yasmin® into interstate commerce and/or post-sale surveillance, and in communications regarding Yaz®/Yasmin® in that Defendants knew or should have known that the product caused such significant bodily harm or death and was not safe for use by consumers.

93.     Defendants further failed to exercise ordinary care in the labeling of Yaz®/Yasmin® in that Defendants failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Yaz®/Yasmin®.

94.     Plaintiff Erin Martino and her healthcare providers reasonably relied to Plaintiff's detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product, including that Yaz®/Yasmin® was as safe or safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

95.     Despite the fact that Defendants knew or should have known that Yaz®/Yasmin®

posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Yaz®/Yasmin® for use by consumers.

96.     Defendants knew or should have known that consumers, including Plaintiff Erin Martino would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

97.     As a direct and proximate result of Defendants' negligence, Plaintiff suffered and will continue to suffer personal injuries, economic and non-economic damages.  Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with deliberate oppression, wantonness, aggravated or egregious fraud, and/or intentionally disregarded Plaintiff Erin Martino's safety and rights, so as to warrant the imposition of punitive damages.

## COUNT V
### Negligent Misrepresentation and/or Fraud
### As To All Defendants

98.     Plaintiff Erin Martino incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

99.     Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yaz®/Yasmin® and made representations to Plaintiff Erin Martino and her healthcare providers regarding the character or quality of Yaz®/Yasmin® for guidance in their decision to select Yaz®/Yasmin®.

100.     Specifically, Defendants represented that Yaz®/Yasmin® was just as safe or safer,

and just as effective or more effective, than other birth control products on the market.

101.    Defendants' representations regarding the character or quality of Yaz®/Yasmin® were untrue.

102.    Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yaz®/Yasmin® created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

103.    Defendants negligently, intentionally and/or fraudulently misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safer and more effective than other types of oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

104.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff and her healthcare providers.

105.    Plaintiff Erin Martino and her healthcare providers reasonably relied to Plaintiff's detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product. Plaintiff Erin Martino reasonably relied upon Defendants' representations to her and/or her healthcare providers that Yaz®/Yasmin® was safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

106.    As a direct and proximate result of Defendants' negligent, intentional and/or

fraudulent misrepresentations or omissions, Plaintiff Erin Martino suffered and will continue to suffer personal injuries and economic and non-economic damages, including pain and suffering.

107.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiffs rights so as to warrant the imposition of punitive damages. Plaintiff reserves the right to present evidence justifying the imposition of punitive damages after a hearing before the court and in accordance with 735 ILCS 5/2-604.1.

**COUNT VI**

**Breach of Express Warranty**

**As to All Defendants**

108.    Plaintiff Erin Martino incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

109.    The Defendants expressly warranted that Yaz®/Yasmin® was a safe and effective prescription contraceptive. Plaintiff Erin Martino reasonably relied upon Defendants' express warranty that Yaz®/Yasmin® was of merchantable quality and safe for its intended use, and, as such, Defendants caused Plaintiff Erin Martino to be prescribed and to use Yaz®/Yasmin.®

110.    Defendants breached their express warranty in that the Yaz®/Yasmin® birth control pill manufactured and sold by Defendants did not confirm to these express representations because Yaz®/Yasmin® caused serious injury to consumers, including Plaintiff Erin Martino, when taken in recommended dosages.

111.    As a direct and proximate result of the Defendants' breach of warranty, Plaintiff Erin Martino has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

112.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiff Erin Martino's rights so as to warrant the imposition of punitive damages.

## COUNT VII

### Breach of Implied Warranty

### As to All Defendants

113.    Plaintiff Erin Martino incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

114.    At the time the Defendants designed, manufactured, marketed, sold, and distributed Yaz®/Yasmin® for use by Plaintiff Erin Martino, Defendants knew of the use for which Yaz®/Yasmin® was intended and impliedly warranted the product to be of merchantable quality and safe for such use.

115.    Plaintiff Erin Martino reasonably relied upon the skill and judgment of the Defendants as to whether Yaz®/Yasmin® was of merchantable quality and safe for its intended use and upon the Defendants' implied warranty as to such matters.

116.    Contrary to such implied warranty, Yaz®/Yasmin® was not of merchantable quality or safe for its intended use, because the product was unreasonably dangerous as described above.

117.    As a direct and proximate result of the Defendants' breach of warranty, Plaintiff

Erin Martino has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

118.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiff Erin Martino's rights so as to warrant the imposition of punitive damages.

## COUNT VIII
### Violation of the Texas Deceptive Trade Practices-consumer Protection Act
### As to All Defendants

119.    Plaintiff Erin Martino incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

120.    At all relevant times, the Texas Deceptive Trade Practice Act (herein after "DTPA"), prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" and declares such acts or practices as unlawful.

121.    Plaintiff Erin Martino is a consumer under the DTPA because Plaintiff is an individual who acquired goods, specifically Yaz®/Yasmin® birth control pills, from Defendants by purchase.

122.    Defendants are corporations that can be sued under the DTPA.

123.    Defendants violated the DTPA by the use of false and misleading misrepresentations or omissions of material fact in connection with the marketing, promotion, and sale of Yaz®/Yasmin® that Plaintiff Erin Martino relied upon to her detriment. Defendants communicated the purported benefits of Yaz®/Yasmin® while failing to disclose the serious and dangerous side effects related to the use of Yaz®/Yasmin® with the intent that consumers, like

Plaintiff Erin Martino, and their healthcare providers rely upon such omissions and misrepresentations and purchase or prescribe Yaz®/Yasmin®, respectively.

124.    It was impracticable for Plaintiff Erin Martino to give Defendants written notice under Texas Business & Commerce Code section 17.505(a) because Plaintiff needed to file this suit to prevent the expiration of the statute of limitations. Therefore, written notice was not required.

125.    As a result of violating the DTPA, Defendants caused Plaintiff Erin Martino to be prescribed and to use Yaz®/Yasmin®, which such use was the producing cause of Plaintiff's severe injuries and damages as previously described herein.

126.    As a result of Defendants' knowing violations of the DTPA, Plaintiff Erin Martino seeks treble damages and costs as provided by the DTPA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Erin Martino prays for judgement against Defendants, jointly and severally, as follows:

A.    Compensatory damages in excess of the jurisdictional amount, including, but not limited to non-economic damages in excess of $75,000.00;

B.    Medical expenses and other economic damages in an amount to be determined at trial of this action;

C.    For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

D.      For reasonable attorneys' fees, expenses and costs of this action;

E.      For pain and suffering;

F.      For pre-judgment interest; and

G.      For such further and other relief the court deems just, equitable, and

proper.

## **JURY DEMAND**

Plaintiff Erin Martino hereby demands a trial by jury on all issues so triable.

Dated: <u>January 26, 2011</u>

RESPECTFULLY SUBMITTED,

**GOOCH LAW FIRM**

By:      /s/ Joel S. Gooch
         Joel S. Gooch
         Texas Bar No. 24032243
         <u>/s/ Kelton C. Tonn</u>
         <u>(with consent)</u>
         Kelton C. Tonn
         Texas Bar No. 24030297
         440 Louisiana, Suite 900
         Houston, Texas 77002
         Telephone: (713) 229-0804
         Facsimile:  (713) 236-7768
Email:  jgooch@goochlawfirm.com
        ktonn@goochlawfirm.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 26, 2011, I electronically filed the foregoing with the Clerk of the Court and served same on all counsel of record using the CM/ECF system.


                        /s/      Joel S. Gooch