## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

———————————————————————
                                        )
**IN RE: YASMIN AND YAZ**               )        **3:09-md-02100-DRH-PMF**
**(DROSPIRENONE) MARKETING, SALES**     )
**PRACTICES AND PRODUCTS LIABILITY**    )        **MDL No. 2100**
**LITIGATION**                          )
———————————————————————)

**This Document Relates to:**
———————————————————————

**ERIN MARTINO,**

     **Plaintiff,**

**v.**                                           **3:10-cv-13797-DRH-PMF**

**BAYER HEALTHCARE**
**PHARMACEUTICALS INC., BAYER**
**SCHERING PHARMA AG, BAYER**
**CORPORATION, BAYER**
**HEALTHCARE, LLC, BAYER**
**HEALTHCARE AG, and BAYER AG,**

     **Defendants.**
———————————————————————

### ANSWER AND ADDITIONAL DEFENSES OF
### DEFENDANT BAYER HEALTHCARE PHARMACEUTICALS INC.

    Defendant Bayer HealthCare Pharmaceuticals Inc. ("BHCP"), for its Answer to

Plaintiff's First Amended Complaint (the "Complaint")[1], states as follows:

———————————————————————

[1] BHCP states that, effective July 1, 2011, Bayer Schering Pharma AG was renamed Bayer
Pharma AG. BHCP further states that Bayer Pharma AG is the same corporate entity as Bayer
Schering Pharma AG. In this Answer, BHCP will respond to allegations in the Complaint
regarding Bayer Schering Pharma AG as referring to the corporate entity now named Bayer
Pharma AG.

In response to the unnumbered paragraph preceding paragraph 1, BHCP admits that YAZ® is a prescription combination oral contraceptive, and that YAZ® contains drospirenone and ethinyl estradiol.  BHCP denies that any of Plaintiff's alleged injuries or damages were caused by YAZ® and denies the remaining allegations in the unnumbered paragraph preceding paragraph 1.

     1.      BHCP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1.

     2.      BHCP is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff was prescribed, purchased and ingested YAZ®.  BHCP denies that any of Plaintiff's alleged injuries were a result of the use of YAZ® or Yasmin®. Because of the vagueness and ambiguity of the allegation that "YAZ®" is hereinafter "Yaz®/Yasmin®", BHCP is without knowledge or information sufficient to form a belief as to the truth of that allegation.  For a further response, in this Answer, BHCP responds to allegations regarding "YAZ®" as referring only to YAZ® and to allegations regarding "Yaz®/Yasmin®" as referring to YAZ® and/or Yasmin®.  BHCP admits that BHCP marketed, advertised and distributed YAZ® and Yasmin® in the United States.  BHCP denies that BHCP designed or developed YAZ® or Yasmin®.  BHCP denies any remaining allegations in paragraph 2.

     3.      BHCP is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff was prescribed, purchased and ingested YAZ® and/or Yasmin®.  BHCP denies that any of Plaintiff's alleged injuries were a result of the use of YAZ® or Yasmin®.  BHCP admits that BHCP marketed, advertised and distributed YAZ® and Yasmin® in the United States.  BHCP denies that BHCP designed or developed YAZ® or Yasmin®.  BHCP denies any remaining allegations in paragraph 3.

4.      BHCP admits that Plaintiff alleges damages in excess of Seventy-Five Thousand Dollars, exclusive of interest and costs.  BHCP denies any remaining allegations in paragraph 4.

5.      BHCP admits that Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.  BHCP denies any remaining allegations in paragraph 5.

6.      BHCP admits that Bayer Corporation is the sole member of Bayer HealthCare LLC, that Schering Berlin Inc. is wholly owned by Bayer HealthCare LLC, that BHCP is wholly owned by Schering Berlin Inc., and that BHCP is indirectly wholly owned by Bayer Corporation. BHCP denies the remaining allegations in paragraph 6.

7.      BHCP admits that it is a Delaware corporation with its principal place of business at 6 West Belt Road, Wayne, New Jersey 07470.  BHCP further admits that it was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc.  BHCP denies the remaining allegations in paragraph 7.

8.      The allegations in the first sentence in paragraph 8 state conclusions of law to which no response is required.  To the extent that a response is required, BHCP admits that it was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and that BHCP is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.  BHCP denies the remaining allegations in the first sentence in paragraph 8.  BHCP admits that BHCP, formerly known as Berlex, Inc., formerly known as Berlex Laboratories, Inc., packaged, promoted, marketed, distributed, labeled and sold YAZ® and Yasmin® in the United States. BHCP denies that BHCP, formerly known as Berlex, Inc., formerly known as Berlex Laboratories, Inc., designed, developed or manufactured YAZ® or Yasmin®.  BHCP admits that BHCP, formerly known as Berlex, Inc., formerly known as Berlex Laboratories, Inc., has sold

and distributed its products in Texas.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 8, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.

9.     BHCP admits that BHCP distributes, sells and markets YAZ® and Yasmin® in the United States.  BHCP denies that BHCP develops, designs, licenses or manufactures YAZ® or Yasmin®.  BHCP admits that it has sold and distributed its products in Texas.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 9, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.

10.     BHCP admits that BHCP is the holder of the approved New Drug Applications ("NDAs") for YAZ®.  BHCP denies any remaining allegations in paragraph 10.

11.     BHCP admits that BHCP is the holder of the approved New Drug Application ("NDA") for Yasmin®.  BHCP denies any remaining allegations in paragraph 11.

12.     BHCP admits that Bayer HealthCare LLC is a limited liability company formed in Delaware with its principal place of business at 555 White Plains Road, Tarrytown, New York 10591.  BHCP denies the remaining allegations in paragraph 12, except that BHCP admits that Bayer HealthCare LLC's principal place of business is in New York.

13.     BHCP admits that Bayer HealthCare LLC's products are sold and distributed in Texas.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 13, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.

14.     BHCP admits that Bayer Pharma AG, which was formerly known as Schering AG, is a German company with its principal place of business at Müllerstraße 178, 13353 Berlin,

Germany.  BHCP admits that Bayer Pharma AG is a pharmaceutical company.  BHCP denies the remaining allegations in paragraph 14.

15.     The allegations in paragraph 15 state conclusions of law to which no response is required.  To the extent that a response is required, BHCP admits that Bayer Pharma AG was formerly known as Schering AG and that Bayer Pharma AG is the same corporate entity as Schering AG.  BHCP denies the remaining allegations in paragraph 15.

16.     BHCP admits that Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006.  For a further response, BHCP states that Bayer Schering Pharma AG was renamed Bayer Pharma AG effective July 1, 2011.  BHCP denies any remaining allegations in paragraph 16.

17.     BHCP denies the allegations in paragraph 17.

18.     BHCP admits that Bayer Pharma AG is the owner of all patents listed in the Orange Book for Yasmin®, and that Yasmin® is an oral contraceptive.  BHCP denies any remaining allegations in paragraph 18.

19.     BHCP admits that Bayer Pharma AG is the owner of all patents listed in the Orange Book for YAZ®, and that YAZ® is an oral contraceptive.  BHCP denies any remaining allegations in paragraph 19.

20.     BHCP admits that Bayer Pharma AG researched, developed and designed YAZ® and Yasmin®, that Bayer Pharma AG manufactures drospirenone and ethinyl estradiol, which are the progestin and estrogen contained in YAZ® and Yasmin®, that Bayer Pharma AG sells YAZ® and Yasmin® to BHCP, that Bayer Pharma AG licensed, distributes and sells a generic equivalent of Yasmin® to Barr Laboratories, Inc., and that Bayer Pharma AG licensed and beginning in December 2010 distributes and sells a generic equivalent of YAZ® to Barr

Laboratories, Inc.  BHCP denies that Bayer Pharma AG manufactures YAZ® or Yasmin®

tablets.  BHCP denies that Bayer Pharma AG markets YAZ® or Yasmin® in the United States.

BHCP denies that Bayer Pharma AG licensed YAZ® or Yasmin®, and denies that Bayer

Pharma AG licensed a generic equivalent of YAZ® or a generic equivalent of Yasmin® in the

United States other than to Barr Laboratories, Inc.  BHCP denies that Bayer Pharma AG sells

YAZ® or Yasmin® to parties located in the United States other than BHCP, and denies that

Bayer Pharma AG sells a generic equivalent of YAZ® or a generic equivalent of Yasmin® to

parties located in the United States other than Barr Laboratories, Inc.  BHCP denies that Bayer

Pharma AG distributes YAZ® or Yasmin® in the United States, and denies that Bayer Pharma

AG distributes a generic equivalent of YAZ® or a generic equivalent of Yasmin® in the United

States other than to Barr Laboratories, Inc.  Because of the vagueness and ambiguity of the

remaining allegations in the first sentence in paragraph 20, BHCP is without knowledge or

information sufficient to form a belief as to the truth of those allegations.  BHCP denies the

remaining allegations in paragraph 20.

21.     BHCP admits that, prior to December 30, 2008, there was a German company

named Bayer HealthCare AG (the "company named Bayer HealthCare AG that existed prior to

December 30, 2008") that had its principal place of business in Leverkusen, Germany.  BHCP

further states that, effective December 30, 2008, the company named Bayer HealthCare AG that

existed prior to December 30, 2008 was merged into Bayer Pharma AG and ceased to exist.

BHCP further states that effective January 5, 2009, a separate German company that was created

in February 2008 was renamed Bayer HealthCare AG (the "company now named Bayer

HealthCare AG"), and that the company now named Bayer HealthCare AG has its principal

place of business in Leverkusen, Germany.  BHCP denies the remaining allegations in paragraph

21.  For a further response, BHCP states that neither the company named Bayer HealthCare AG that existed prior to December 30, 2008 nor the company now named Bayer HealthCare AG designed, researched, developed, licensed, manufactured, tested, advertised, promoted, marketed, sold or distributed YAZ® or Yasmin®.

22.    BHCP denies the allegations in the first sentence in paragraph 22.  BHCP denies, on information and belief, the remaining allegations in paragraph 22.

23.    BHCP denies the allegations in paragraph 23.

24.    BHCP admits that Bayer AG is a German company with its headquarters in Leverkusen, North Rhine-Westphalia, Germany.  BHCP admits that Bayer AG's business areas include material science and pharmaceuticals.  BHCP denies the remaining allegations in paragraph 24.

25.    BHCP denies the allegations in paragraph 25.

26.    BHCP admits that Bayer Corporation, Bayer Pharma AG and the company now named Bayer HealthCare AG are wholly owned by Bayer AG and that BHCP and Bayer HealthCare LLC are indirectly owned by Bayer AG.  BHCP denies any remaining allegations in paragraph 26.

27.    BHCP denies the allegations in paragraph 27.

28.    BHCP denies the allegations in paragraph 28.

29.    BHCP denies the allegations in paragraph 29.

30.    BHCP admits that the Complaint contains allegations referring to BHCP and other entities collectively as "Bayer" or "Defendants" or otherwise, but BHCP is not answering the Complaint on behalf of any entity other than BHCP, and is not answering allegations that are

directed to any entity other than BHCP.  BHCP accordingly denies the allegations in paragraph 30.

31.     The allegations in paragraph 31 state conclusions of law to which no response is required.  To the extent that a response is required, BHCP states that, on the face of the Complaint and assuming that Plaintiff's citizenship is properly alleged, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of different states and in which citizens of a foreign state are additional parties, with an amount in controversy allegedly exceeding $75,000, exclusive of interest and costs.  BHCP denies any remaining or inconsistent allegations in paragraph 31.

32.     The allegations in paragraph 32 state conclusions of law to which no response is required.  To the extent that a response is required, BHCP admits that, on the face of the Complaint, it was proper pursuant to Case Management Order No. 9, Agreed Order Regarding Direct Filing of Actions in the Southern District of Illinois, to file this case for purposes of pretrial proceedings directly in the multidistrict litigation captioned *In re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* Case No. 3:09-md-02100-DRH-PMF, MDL No. 2100, pending in the United States District Court for the Southern District of Illinois.  BHCP denies the allegations in paragraph 32 regarding that Order to the extent that they are inconsistent with the language of the Order or omit portions of the Order. BHCP denies the remaining allegations in paragraph 32.

33.     BHCP admits that Plaintiff brings this case seeking certain damages.  BHCP admits that YAZ® and Yasmin® are prescription oral contraceptives combining ethinyl estradiol and drospirenone.  BHCP admits that BHCP marketed and distributed YAZ® and Yasmin® in the United States.  BHCP denies that BHCP designed or manufactured YAZ® or Yasmin®.

BHCP is without knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff ingested and used YAZ® or Yasmin® and that Plaintiff suffered the injuries alleged.  BHCP denies that any of Plaintiff's alleged injuries were a result of the use of YAZ® or Yasmin® and denies any remaining allegations in paragraph 33.

34.     BHCP admits that BHCP marketed the birth control pills YAZ® and Yasmin® in the United States.  BHCP denies that BHCP manufactured YAZ® or Yasmin®.  BHCP admits that YAZ® and Yasmin® are combination oral contraceptives ("COCs") containing an estrogen and a progestin.  BHCP further admits that COCs prevent pregnancy through some combination of effects which may include the inhibition of ovulation and changes in the cervical mucus (which increases the difficulty of sperm entry into the uterus) and the endometrium (which reduces the likelihood of implantation).  BHCP denies the remaining allegations in paragraph 34.

35.     BHCP admits that the United States Food and Drug Administration (the "FDA") approved the New Drug Application for Yasmin® in 2001, and that the FDA approved the first New Drug Application for YAZ® in 2006.  BHCP denies any remaining allegations in paragraph 35.

36.     BHCP admits that YAZ® and Yasmin® contain the estrogen ethinyl estradiol and the progestin drospirenone.  BHCP further admits that Yasmin® contains 0.03 mg of ethinyl estradiol and 3 mg of drospirenone, and that YAZ® contains 0.02 mg of ethinyl estradiol and 3 mg of drospirenone.  BHCP denies any remaining allegations in paragraph 36.

37.     BHCP admits that YAZ® and Yasmin® contain drospirenone, and that Yasmin® was the first birth control pill approved by the FDA for use in the United States that contained the progestin drospirenone.  Because of the vagueness and ambiguity of the remaining

allegations in paragraph 37, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.

38.     BHCP admits that women using combination oral contraceptives in the 1960s were found to have an increased risk of arterial and venous thromboembolic events, compared to non-pregnant women who were not using combination oral contraceptives.  BHCP further admits that the risk associated with the use of combination oral contraceptives declined over the period that the estrogen content in combination oral contraceptives was decreased.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 38, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.

39.     BHCP admits that progestins were developed that have been referred to as "second generation" progestins, including levonorgestrel.  Because of the vagueness and ambiguity of the remaining allegations in the first sentence in paragraph 39, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.  BHCP denies the remaining allegations in paragraph 39 as stated.  BHCP admits that combination oral contraceptives using lower estrogen amounts were considered to have lower risks of arterial and venous thromboembolic events than combination oral contraceptives using higher doses of estrogen.  BHCP denies the remaining allegations in paragraph 39.

40.     BHCP admits that progestins were developed that have been referred to as "third generation" progestins.  BHCP further admits that the labeling for all oral contraceptives contains a warning of the risk of deep vein thrombosis and pulmonary embolism.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 40, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.

41.     BHCP admits that both YAZ® and Yasmin® contain the estrogen ethinyl estradiol, and that ethinyl estradiol has been used in birth control pills approved by the FDA for use in the United States for decades.  BHCP denies any remaining allegations in paragraph 41.

42.     BHCP admits that drospirenone is a progestin.  Because of the vagueness and ambiguity of the remaining allegations in the first sentence in paragraph 42, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.  BHCP admits that YAZ®, Yasmin® and Ocella® contain drospirenone, and that Ocella® is a generic version of Yasmin®.  BHCP denies the remaining allegations in paragraph 42.

43.     BHCP denies the allegations in the first sentence in paragraph 43.  BHCP admits that drospirenone is a different chemical entity than the progestins that were used in so-called second generation combination oral contraceptives and accordingly, drospirenone may have certain effects that are different from those of so-called second generation progestins.  BHCP denies the remaining allegations in paragraph 43.

44.     Because of the vagueness and ambiguity of the allegation regarding what "[o]ne possible mechanism of action is", BHCP is without knowledge or information sufficient to form a belief as to the truth of that allegation.  BHCP denies the remaining allegations in paragraph 44.

45.     Because of the vagueness and ambiguity of the allegation regarding what "[a]nother possible mechanism of action is", BHCP is without knowledge or information sufficient to form a belief as to the truth of that allegation.  BHCP admits that drospirenone may potentially increase potassium levels in the blood.  BHCP further states that the labeling for YAZ® and Yasmin® provides appropriate warnings regarding the risks associated with drospirenone.  BHCP denies that YAZ® or Yasmin® when used in accordance with the labeling

are associated with hyperkalemia at the level that can cause heart rhythm disturbances or be fatal. BHCP admits that severe hyperkalemia from other causes may result in certain heart rhythm disturbances or be fatal.  BHCP denies the remaining allegations in paragraph 45.

46.     BHCP denies the allegations in paragraph 46.

47.     BHCP admits that Yasmin® has been sold in the United States since 2001 and that YAZ® has been sold in the United States since 2006.  BHCP further admits that since 2001, the FDA received hundreds of MedWatch forms regarding women reportedly using YAZ® or Yasmin® in which adverse events including death were reported.  For a further response, the submission of a MedWatch form to the FDA does not constitute an admission or assertion that the use of YAZ® or Yasmin® caused or contributed to the event that is the subject of the MedWatch form.  BHCP further responds that with respect to a number of the reports of adverse events including death submitted to the FDA, the use of YAZ® or Yasmin® has not been confirmed.  BHCP further responds that all birth control pills approved for use in the United States are associated with reports of adverse events including death, and that the labeling for YAZ® and Yasmin® provides appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.  BHCP denies the remaining allegations in paragraph 47.

48.     BHCP admits that the British Medical Journal published an article regarding Yasmin® in April 2002 and a paper regarding Yasmin® in February 2003.  BHCP denies the allegations in paragraph 48 regarding the contents of the April 2002 article and the February 2003 paper to the extent that they are inconsistent with the language of the April 2002 article or the February 2003 paper or omit portions of the April 2002 article or the February 2003 paper. BHCP denies the remaining allegations in paragraph 48.

49.   BHCP admits that during the period January 1, 2004 through September 30, 2008, the FDA received over fifty MedWatch forms regarding women reportedly using YAZ® or Yasmin® in which deaths were reported, including MedWatch forms regarding women in their child-bearing years reportedly using YAZ® or Yasmin® in which deaths relating to a variety of causes were reported.  BHCP further admits that during that same period, the MedWatch forms received by the FDA concerning women who reportedly used YAZ® or Yasmin® in which deaths were reported included MedWatch forms concerning women as young as 17 years old. For a further response, the submission of a MedWatch form to the FDA does not constitute an admission or assertion that the use of YAZ® or Yasmin® caused or contributed to the event that is the subject of the MedWatch form.  BHCP further responds that with respect to a number of the reports of death submitted to the FDA, the use of YAZ® or Yasmin® has not been confirmed.  In addition, BHCP responds that all birth control pills approved for use in the United States are associated with reports of adverse events including death, and that the labeling for YAZ® and Yasmin® provides appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.  BHCP denies the remaining allegations in paragraph 49.

50.   BHCP denies the allegations in the first sentence in paragraph 50.  BHCP admits that the British Medical Journal published a study authored by Lidegaard, et al., titled Hormonal contraception and risk of venous thromboembolism: national follow-up study.  BMJ 2009;339:b2890.  BHCP denies the allegations regarding the study's conclusion, which are both incomplete and misleading as alleged, and which fail to acknowledge the numerous limitations recognized by the authors of the study.  BHCP further admits that the British Medical Journal published a study authored by van Hylckama Vlieg, Vandenbroucke, et al., titled The venous thrombotic risk of oral contraceptives, effects of oestrogen dose and progestogen type: results of

the MEGA case-control study.  BMJ 2009;339:b2921.  BHCP denies the remaining allegations in paragraph 50.

51.     BHCP denies the allegations in paragraph 51.

52.     BHCP admits that BHCP markets YAZ® and Yasmin® consistent with YAZ®'s and Yasmin®'s respective FDA-approved labeling.  BHCP denies the remaining allegations in paragraph 52.

53.     BHCP admits that YAZ® and Yasmin® differ from other birth control pills because they contain the progestin drospirenone.  BHCP further responds that the labeling for YAZ® and Yasmin® provides appropriate warnings regarding the risks associated with drospirenone.  BHCP denies the remaining allegations in paragraph 53.

54.     BHCP denies that Berlex Laboratories, Inc. was sold to BHCP in 2006.  BHCP admits that Berlex Laboratories, Inc., now known as BHCP, promoted Yasmin®.  BHCP admits that a television advertisement for Yasmin® contained the statement that Plaintiff quotes, as well as other statements, which Plaintiff omits.  BHCP denies the remaining allegations in paragraph 54.

55.     BHCP admits that the FDA sent a letter dated July 10, 2003 relating to Yasmin® to Berlex Laboratories, Inc.  BHCP denies the allegations in paragraph 55 regarding the contents of that letter to the extent that they are inconsistent with the language of the letter or omit portions of the letter.  BHCP denies the remaining allegations in paragraph 55.

56.     BHCP admits that the FDA sent a letter dated July 10, 2003 relating to Yasmin® to Berlex Laboratories, Inc.  BHCP denies the allegations in paragraph 56 regarding the contents of that letter to the extent that they are inconsistent with the language of the letter or omit portions of the letter.  BHCP denies the remaining allegations in paragraph 56.

57.     BHCP denies the allegations in paragraph 57.

58.     BHCP admits that BHCP advertised YAZ® and Yasmin® consistent with YAZ®'s and Yasmin®'s respective FDA-approved labeling.  BHCP denies the remaining allegations in paragraph 58.

59.     BHCP admits that the FDA sent a letter dated October 3, 2008 relating to YAZ® to BHCP.  BHCP denies the allegations in paragraph 59 regarding the contents of that letter to the extent that they are inconsistent with the language of the letter or omit portions of the letter. BHCP denies the remaining allegations in paragraph 59.

60.     BHCP admits that the FDA sent a letter dated October 3, 2008 relating to YAZ® to BHCP.  BHCP denies the allegations in paragraph 60 regarding the contents of that letter to the extent that they are inconsistent with the language of the letter or omit portions of the letter. BHCP denies the remaining allegations in paragraph 60.

61.     BHCP is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding what the FDA "felt".  BHCP admits that, after the October 3, 2008 letter, BHCP agreed with the FDA to run new television advertisements for YAZ® to clarify statements made in prior advertisements.  BHCP denies the remaining allegations in paragraph 61.

62.     BHCP denies the allegations in paragraph 62 to the extent that they are inconsistent with relevant Consent Decrees or omit portions of those Consent Decrees.  BHCP denies the remaining allegations in paragraph 62.

63.     BHCP admits that BHCP marketed YAZ® and Yasmin® consistent with YAZ®'s and Yasmin®'s respective FDA-approved labeling.  BHCP further states that BHCP provided appropriate warnings regarding the risks associated with the use of YAZ® and

Yasmin®.  BHCP is without knowledge or information sufficient to form a belief as to the truth

of the allegations that Plaintiff was prescribed and used YAZ® or Yasmin® and the allegation

regarding what Plaintiff's alleged prescription and use of YAZ® or Yasmin® were based upon.

BHCP denies that any of Plaintiff's alleged injuries were a result of the use of YAZ® or

Yasmin® and denies the remaining allegations in paragraph 63.

64.     BHCP denies the allegations in paragraph 64.

65.     BHCP denies the allegations in paragraph 65.

66.     BHCP denies the allegations in paragraph 66.

67.     BHCP denies the allegations in paragraph 67.

68.     BHCP denies the allegations in paragraph 68.

69.     BHCP denies the allegations in paragraph 69.

70.     BHCP denies the allegations in paragraph 70.

## COUNT I

71.     BHCP incorporates by reference its responses to all preceding paragraphs of the

Complaint as if fully set forth herein.

72.     BHCP admits that it distributes, sells and supplies YAZ® and Yasmin® in the

United States.  BHCP denies that it manufactures or designs YAZ® or Yasmin®.  BHCP denies

any remaining allegations in paragraph 72.

73.     BHCP admits that it sold, distributed and supplied YAZ® and Yasmin® in the

United States.  BHCP denies that it manufactured or designed YAZ® or Yasmin®.  BHCP

admits that it expected YAZ® and Yasmin® to reach patients, who were prescribed YAZ® or

Yasmin® by physicians in accordance with FDA-approved labeling, without substantial change

from the condition in which YAZ® and Yasmin® were sold, distributed or supplied by BHCP.

Because of the vagueness and ambiguity of the remaining allegations in paragraph 73, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.

74.     BHCP denies the allegations in paragraph 74.

75.     BHCP denies the allegations in paragraph 75.

76.     BHCP denies the allegations in paragraph 76.

## **COUNT II**

77.     BHCP incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

78.     BHCP admits that it distributed, sold, supplied and marketed YAZ® and Yasmin® in the United States.  BHCP denies that it manufactured or designed YAZ® or Yasmin®.  BHCP admits that it expected YAZ® and Yasmin® to reach patients, who were prescribed YAZ® or Yasmin® by physicians in accordance with FDA-approved labeling, without substantial change from the condition in which YAZ® and Yasmin® were sold, distributed or supplied by BHCP.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 78, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.

79.     BHCP denies the allegations in paragraph 79.

80.     BHCP denies the allegations in paragraph 80.

81.     BHCP denies the allegations in paragraph 81.  For a further response, BHCP states that BHCP provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.

82.     BHCP denies the allegations in paragraph 82.

83.     BHCP denies the allegations in paragraph 83.

84.     BHCP denies the allegations in paragraph 84.

17

## COUNT III

85.     BHCP incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

86.     BHCP denies the allegations in paragraph 86.

87.     BHCP denies the allegations in paragraph 87.

88.     BHCP denies the allegations in paragraph 88.

89.     BHCP denies the allegations in paragraph 89.

## COUNT IV

90.     BHCP incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

91.     The allegations in paragraph 91 state conclusions of law to which no response is required.  To the extent that a response is required, BHCP denies that BHCP violated any applicable duty relating to YAZ® or Yasmin®, including any duty with respect to the design, manufacture, sale, testing, labeling, marketing, promotion, distribution or advertising of YAZ® or Yasmin®, and denies that any communication by BHCP to consumers was untruthful.  For a further response, BHCP states that BHCP provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.  BHCP denies that BHCP designed or manufactured YAZ® or Yasmin®.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 91, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.

92.     BHCP denies the allegations in paragraph 92.

93.     BHCP denies the allegations in paragraph 93.

94.     BHCP denies the allegations in paragraph 94.  For a further response, BHCP states that BHCP provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.

95.     BHCP denies the allegations in paragraph 95.

96.     BHCP denies the allegations in paragraph 96.

97.     BHCP denies the allegations in paragraph 97.

## COUNT V

98.     BHCP incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

99.     BHCP admits that it distributes, sells and supplies YAZ® and Yasmin® in the United States.  BHCP denies that it manufactures or designs YAZ® or Yasmin®.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 99, BHCP is without knowledge or information sufficient to form a belief as to the truth of those allegations.

100.    BHCP denies the allegations in paragraph 100.  For a further response, BHCP states that BHCP provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.

101.    BHCP denies the allegations in paragraph 101.

102.    BHCP denies the allegations in paragraph 102.

103.    BHCP denies the allegations in paragraph 103.

104.    BHCP denies the allegations in paragraph 104.

105.    BHCP denies the allegations in paragraph 105.  For a further response, BHCP states that BHCP provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.

106.     BHCP denies the allegations in paragraph 106.

107.     BHCP denies the allegations in paragraph 107.

## COUNT VI

108.     BHCP incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

109.     The allegations in the first sentence in paragraph 109 state conclusions of law to which no response is required.  To the extent that a response is required, BHCP admits that BHCP marketed YAZ® and Yasmin® as safe and effective for the indications approved by the FDA, when prescribed to patients by physicians in accordance with the labeling and prescribing information approved by the FDA.  For a further response, BHCP states that BHCP provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.  BHCP denies the remaining allegations in paragraph 109.

110.     BHCP denies the allegations in paragraph 110.

111.     BHCP denies the allegations in paragraph 111.

112.     BHCP denies the allegations in paragraph 112.

## COUNT VII

113.     BHCP incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

114.     The allegations in paragraph 114 state conclusions of law to which no response is required.  To the extent that a response is required, BHCP admits that BHCP marketed YAZ® and Yasmin® as safe for the indications approved by the FDA, when prescribed to patients by physicians in accordance with the labeling and prescribing information approved by the FDA.  For a further response, BHCP states that BHCP provided appropriate warnings regarding the

risks associated with the use of YAZ® and Yasmin®.  BHCP denies the remaining allegations in paragraph 114.

115.    BHCP is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Plaintiff relied upon and whether that alleged reliance was reasonable.  BHCP denies the remaining allegations in paragraph 115.

116.    BHCP denies the allegations in paragraph 116.

117.    BHCP denies the allegations in paragraph 117.

118.    BHCP denies the allegations in paragraph 118.

## **COUNT VIII**

119.    BHCP incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

120.    The allegations in paragraph 120 state conclusions of law to which no response is required.  To the extent that a response is required, BHCP denies the allegations regarding the Texas Deceptive Trade Practices Act to the extent that they are inconsistent with the language of the Act or omit relevant portions of the Act, or are inconsistent with case law interpreting the Act.  BHCP denies that Plaintiff is entitled to any relief under the Act and denies any remaining allegations in paragraph 120.

121.    The allegations in paragraph 121 state conclusions of law to which no response is required.  To the extent that a response is required, BHCP denies the allegations in paragraph 121.

122.    The allegations in paragraph 122 state conclusions of law to which no response is required.  To the extent that a response is required, BHCP denies the allegations in paragraph 122.

123.    BHCP denies the allegations in paragraph 123.

124.    The allegations in paragraph 124 state conclusions of law to which no response is required.  To the extent that a response is required, BHCP denies the allegations in paragraph 124.

125.    BHCP denies the allegations in paragraph 125.

126.    BHCP denies the allegations in paragraph 126.

127.    BHCP denies that Plaintiff is entitled to any relief, including but not limited to the relief requested in the "Wherefore" clause of the Complaint.

128.    BHCP denies each and every allegation in the Complaint that relates to or is directed to BHCP unless such allegations are expressly admitted in this Answer.

## **ADDITIONAL DEFENSES**

Discovery and investigation may reveal that one or more of the following additional defenses should be available to BHCP in this matter.  BHCP accordingly reserves the right to assert these separate and additional defenses.  Upon completion of discovery, if the facts warrant, BHCP may withdraw any of these additional defenses as may be appropriate.  BHCP further reserves the right to amend its Answer and defenses, and to assert additional defenses and other claims, as this matter proceeds.

Further answering, and by way of additional defense, BHCP states as follows:

1.    Plaintiff's Complaint, and each and every count contained therein, fails to state a cause of action or claim upon which relief can be granted.

2.    Some or all of Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or statutes of repose.

3.      Plaintiff's claims are barred, in whole or in part, by laches, waiver and/or estoppel.

4.      Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate Plaintiff's alleged damages.

5.      The acts and omissions of Plaintiff caused and/or contributed to the alleged damages, thereby barring or reducing the amount of recovery under the doctrines of contributory negligence and/or comparative negligence.  Plaintiff's recovery, if any, therefore is barred or should be apportioned in accordance with applicable law.

6.      The alleged injuries sustained by Plaintiff, if any, were caused, in whole or in part, by pre-existing physical, medical, and/or physiological conditions, for which BHCP has no legal responsibility.

7.      If Plaintiff suffered injuries as alleged in the Complaint, which is expressly denied, such injuries arose from, and were caused by, risks, hazards, and dangers knowingly assumed by Plaintiff.  Plaintiff's recovery accordingly is barred or should be reduced by Plaintiff's assumption of the risk.

8.      If the injuries claimed by Plaintiff were related to the use of YAZ® and/or Yasmin®, which is expressly denied, any such injuries were the result of an idiosyncratic or allergic reaction to YAZ® and/or Yasmin®.

9.      The injuries and damages claimed by Plaintiff, if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of BHCP was not the proximate and/or competent producing cause of such alleged injuries and damages.

10.     The injuries and damages claimed by Plaintiff, if any, are barred or must be reduced because those damages arose from the acts or omissions of persons or entities other than BHCP for whom BHCP has no legal responsibility.

11.     If Plaintiff sustained the injuries or incurred the expenses as alleged, which is expressly denied, said injuries or expenses were caused by the unforeseeable alteration, improper handling or other unforeseeable misuse, or use inconsistent with the labeling of the prescription drugs YAZ® and/or Yasmin®.  Plaintiff's recovery is accordingly barred.

12.     The alleged injuries and damages, if any, were the result of unavoidable circumstances that could not have been prevented by any person, including BHCP.

13.     Plaintiff's claims are barred because the benefits of YAZ® and Yasmin® outweigh the risks, if any, that might be associated with the products.

14.     The claims in the Complaint are barred in whole or in part by the learned intermediary doctrine.

15.     Plaintiff's Complaint fails to state a claim upon which relief can be granted in that the methods, standards, and techniques utilized with respect to the design, manufacture, marketing and sale of YAZ® and Yasmin®, including but not limited to adequate warnings and instructions with respect to the products' use included in the products' package inserts and other literature, conformed to the applicable state of the art.  YAZ® and Yasmin®, including their labeling approved by the FDA, complied with the state of scientific and medical knowledge available at the time.  Plaintiff's recovery accordingly is barred.

16.     Plaintiff's claims are barred because YAZ® and Yasmin® were neither defective nor unreasonably dangerous in their design, manufacture or marketing and were reasonably safe and reasonably fit for their intended uses, thereby barring Plaintiff's recovery.

17.     The warnings and instructions accompanying YAZ® and Yasmin® at the time of the occurrence or injuries alleged by Plaintiff were legally adequate warnings and instructions.

18.     Plaintiff's claims are barred as a matter of law pursuant to relevant provisions of the Restatement (Third) of Torts and the Restatement (Second) of Torts, including, but not limited to, § 402A, comment k.

19.     BHCP gives notice that to the extent that the sophisticated purchaser doctrine is applicable to any of the allegations in the Complaint, BHCP intends to rely upon same in defense of this action.

20.     The prescription drugs YAZ® and Yasmin® complied with the applicable product safety regulations promulgated by the FDA.  Compliance with such regulations demonstrates that due care was exercised with respect to the design, manufacture, testing, marketing and sale of these prescription drugs, and that they were neither defective nor unreasonably dangerous.  Plaintiff's recovery is accordingly barred.

21.     Any claims by Plaintiff relating to alleged communications with regulatory agencies of the United States government are barred in whole or in part by operation of applicable law, including First and Fourteenth Amendment rights to petition the government.

22.     Plaintiff's claims are barred in whole or in part because the commercial speech relating to YAZ® and Yasmin® is protected under the First Amendment of the United States Constitution and the applicable state constitution.

23.     Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the content of warnings and labeling for prescription drugs.

24.     Plaintiff's claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution by reason of the federal regulation of prescription drug manufacturing, testing, marketing, and labeling.

25.     Plaintiff cannot state a claim upon which relief may be granted with regard to warnings and labeling for prescription drugs because the remedy sought by Plaintiff is subject to the exclusive regulation of the FDA.

26.     This Court should abstain from adjudicating Plaintiff's claims relating to warnings and labeling in deference to the interpretation of regulations relating to prescription drug labeling by the FDA.

27.     Plaintiff did not detrimentally rely on any labeling, warnings or information concerning YAZ® and/or Yasmin®.

28.     Applicable law does not recognize a post-sale duty to warn in the present circumstances.  Accordingly, the Complaint fails to state a claim upon which relief may be granted for inadequate post-sale marketing or post-sale duty to warn.

29.     Upon information and belief, each item of economic loss alleged in the Complaint was, or with reasonable certainty will be, replaced or indemnified in whole or in part by collateral sources.

30.     To the extent that Plaintiff's Complaint seeks recovery for benefits entitled to be received or actually received from any other source for injuries alleged in the Complaint, such benefits are not recoverable in this action under applicable law.

31.     To the extent that Plaintiff's claims have been settled or Plaintiff will in the future settle with any person or entity with respect to the injuries asserted in the Complaint, the liability of BHCP, if any, should be reduced accordingly.

32.     Plaintiff's claims may be barred, in whole or in part, due to res judicata, collateral estoppel, or by release of claims.

33.     Plaintiff's Complaint fails to state a claim upon which relief can be granted as to costs, attorneys' fees, expenses, pre-judgment interest, treble damages or successor liability.

34.     Plaintiff's Complaint fails to join indispensable parties necessary for the just adjudication of this matter.

35.     Plaintiff's Complaint fails to state a claim upon which relief can be granted for several or joint and several liability.

36.     Plaintiff's claims for breach of warranty are barred because Plaintiff failed to give timely notice of any alleged breach of warranty.

37.     BHCP did not sell or distribute YAZ® or Yasmin® directly to Plaintiff, and Plaintiff did not receive or rely upon any representations or warranties as alleged in the Complaint.  Plaintiff's claims for breach of warranty are barred by lack of privity between Plaintiff and BHCP.

38.     Plaintiff's claims for breach of warranty, express or implied, are barred by the applicable state's Uniform Commercial Code or other applicable law.

39.     Plaintiff's Complaint fails to state a claim for fraud, misrepresentation and/or deception, and fails to allege the circumstances constituting fraud with the particularity required by the Federal Rules of Civil Procedure.

40.     Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

41.     BHCP denies any conduct for which punitive or exemplary damages could or should be awarded and denies that sufficient evidence has been produced to support or sustain the imposition of punitive damages pursuant to the applicable standard(s) of proof.

42.     Permitting recovery of punitive or exemplary damages in this case would be unconstitutionally vague and/or overbroad and would violate BHCP's constitutional rights as secured by the Fifth and Seventh Amendments to the United States Constitution, would violate its rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution and the prohibition against excessive fines in the United States Constitution, and would contravene other provisions of the United States Constitution and any applicable state constitution.

43.     Plaintiff cannot recover punitive or exemplary damages against BHCP because such an award, which is penal in nature, would violate BHCP's constitutional rights under the United States Constitution and any applicable state constitution, unless BHCP is afforded the same procedural safeguards as are criminal defendants, including but not limited to the right to avoid self incrimination, the right to forego production and disclosure of incriminating documents and the right to the requirement of a level of proof beyond a reasonable doubt.

44.     Any imposition of punitive or exemplary damages in this case would contravene the Commerce Clause of the United States Constitution, in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

45.     With respect to Plaintiff's demand for punitive or exemplary damages, BHCP specifically incorporates by reference any and all standards or limitations regarding the determination and enforceability of punitive or exemplary damages awards under applicable state law or other applicable law.

46.     Any award of punitive or exemplary damages is barred to the extent that it is inconsistent with the standards and limitations set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605 (2008).

47.     No act or omission of BHCP was malicious, with deliberate oppression, wantoness, aggravated or egregious fraud and/or with intentional disregard of Plaintiff's safety and rights, as alleged in the Complaint.  No act or omission of BHCP was fraudulent, malicious or grossly negligent.  Accordingly, Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

48.     Plaintiff's claims for punitive or exemplary damages as set forth in the Complaint are barred by 735 ILCS 5/2-604.1.

49.      Plaintiff's Complaint fails to state a claim upon which relief can be granted under the Texas Deceptive Trade Practices Act because of the exemption contained in § 17.49(e) of the Texas Business and Commerce Code.  In the alternative, Plaintiff's Complaint fails to state a claim for unlawful conduct under the Texas Deceptive Trade Practices Act because BHCP completely complied with the applicable law in connection with the marketing and sale of YAZ® and Yasmin®.

50.      Plaintiff's Complaint fails to state a claim for misleading or unfair advertising or for deceptive business practices under the Texas Deceptive Trade Practices Act because BHCP's labeling and advertising for YAZ® and Yasmin® was not misleading, unfair or deceptive.

51.     Plaintiff's claims are barred in whole or in part because the Texas Deceptive Trade Practices Act is insufficiently definite to provide adequate or fair notice of the conduct

proscribed, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the due process protections of the applicable state constitution.

52.     Plaintiff's claims are barred in whole or in part because the Texas Deceptive Trade Practices Act unconstitutionally burdens interstate business practices relating to prescription drugs, which are heavily regulated by the FDA.

53.     Plaintiff's action should be stayed or dismissed because Plaintiff has not exhausted the administrative remedies as required under the Texas Deceptive Trade Practices Act.

54.     Plaintiff's claims under the Texas Deceptive Trade Practices Act are barred in whole or in part because there was no intentional or knowing conduct which would allow an award of mental anguish damages to Plaintiff under § 17.50(b) of the Texas Deceptive Trade Practices Act.

55.     Plaintiff failed to provide sixty-day pre-suit notice as required by § 17.505(a) of the Texas Deceptive Trade Practices Act.

56.     This Court is an improper venue for the trial of this action.

57.     This Court is not the proper forum for the trial of this action and is not a convenient forum for the just adjudication of Plaintiff's claims.

58.     Plaintiff's claims for breach of warranty, express or implied, are barred by the Texas Business and Commerce Code or other applicable law.

59.     Plaintiff's claims are barred, in whole or in part, and BHCP is entitled to a presumption of no liability under Texas Civil Practice and Remedies Code §§ 82.001 and 82.007.

60.     BHCP is unaware at this time of any settlements by any alleged joint tortfeasor. In the event any settlement has been or will be made by any alleged joint tortfeasor, then BHCP is entitled to a full credit, offset, pro rata reduction, or percentage reduction, based on the percentage of fault attributable to each settling party, person, or other entity herein, and BHCP makes known to the other parties and to the Court that it will avail itself of its rights under Texas Civil Practice & Remedies Code §§ 33.012 and 33.013.

61.     Plaintiff's Complaint, to the extent that it seeks recovery of punitive damages, violates Article I, Section 13 of the Texas Constitution, and it violates BHCP's rights to substantive and procedural due process as provided in Article I, Section 19 of the Texas Constitution and the Fifth and Fourteenth Amendments of the United States Constitution.  At a minimum, any award of punitive damages must be based upon clear and convincing evidence and proven beyond a reasonable doubt.

62.     Any judgment awarding punitive damages based on BHCP's dissimilar conduct or acts; any acts or conduct not aimed toward Plaintiff; any acts or conduct occurring outside the State of Texas that may have been lawful where they occurred; any acts or conduct, independent from the acts or conduct that allegedly harmed the Plaintiff whose claims are being tried; or any acts or conduct lacking a nexus (or which bear no relation) to the specific harm alleged by the Plaintiff whose claims are being tried, would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the due process provisions of the Texas Constitution, and the common law and public policies of the State of Texas.  Awarding punitive damages in this case based on any of those impermissible factors would effectively adjudicate the merits of other persons' hypothetical claims against BHCP; it would create the possibility of multiple punitive damages awards for the same conduct; and it would violate the United States

Supreme Court's pronouncements in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996),

*State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), *Philip Morris*

*USA v. Williams*, 549 U.S. 346 (2007), and *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605 (2008).

63.     Any judgment awarding punitive damages under Texas law without proof of

every element beyond a reasonable doubt would violate BHCP's rights under Sections 10, 14

and 19 of Article I of the Texas Constitution.  In addition, the assessment of punitive damages, a

remedy that is essentially criminal in nature, without the protections found in the Texas Code of

Criminal Procedure and the Texas Penal Code, constitutes infliction of a criminal penalty

without the proper safeguards in violation of Sections 10, 14 and 19 of Article I of the Texas

Constitution.

64.     Unless the amount of punitive damages is required to be established by clear and

convincing evidence under Texas law, any judgment awarding punitive damages would violate

BHCP's due process rights guaranteed by the Fourteenth Amendment to the United States

Constitution and by Section 19 of Article I of the Texas Constitution.

65.     Jury instructions under Texas law are unconstitutional to the extent that they: (1)

do not provide any standard of sufficient clarity for determining the appropriateness, or the

appropriate size, of any punitive damages award; (2) do not instruct on the limits of punitive

damages imposed by the applicable principles of deterrence and punishment; (3) do not

expressly prohibit juries from awarding punitive damages or determining the amount of an award

of punitive damages, in whole or in part, on the basis of invidiously discriminatory

characteristics; (4) permit juries to award punitive damages under a standard for determining

liability for punitive damages that is vague and arbitrary and does not define with sufficient

clarity the conduct or mental state that makes punitive damages permissible; (5) fail to instruct

that any punitive damages juries may assess must bear a reasonable relationship to the harm caused to the plaintiff whose claims are being tried; (6) fail to instruct that punitive damages cannot be imposed for alleged harm to other plaintiffs or to non-parties; and (7) fail to instruct that the amount of criminal fines or civil penalties set by statute or historically imposed for like misconduct should be considered as one indicator of an appropriate range of punishment.  Any judgment awarding punitive damages utilizing Texas statutory punitive damages instructions would violate BHCP's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article I of the Texas Constitution.

66.     An award of punitive damages based on conduct or acts committed by those who are not BHCP's vice-principals would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the due process provisions of the Texas Constitution, and the common law and public policies of the State of Texas and would be erroneous.

67.     To the extent that Plaintiff's pleas for punitive damages expose BHCP to double jeopardy or call for BHCP to be punished more than once for the same conduct, Plaintiff's pleas violate BHCP's rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 14 and 19 of the Texas Constitution.

68.     To the extent that Plaintiff seeks punitive damages, either unlimited or limited, the Complaint seeks excessive fines in violation of BHCP's rights provided in the Eighth and Fourteenth Amendments of the United States Constitution and in Article I, Sections 13 and 19 of the Texas Constitution.  Any award of punitive damages is also excessive under those constitutional provisions to the extent that it does not bear a reasonable relation to the injury, harm, and damages actually suffered by the Plaintiff.

69.     Any judgment imposing punitive damages would violate the open courts provision of the Texas Constitution, the supremacy clause of the United States Constitution (Article VI), the prohibition against ex post facto and retroactive laws in Article I, Section 16 of the Texas Constitution, and the separation of powers doctrine embodied in the structure of the United States Constitution and in Article II, Section 1 of the Texas Constitution.

70.     To the extent that Texas law permits punishment to be measured by the net worth or financial status of BHCP and imposes greater punishment on defendants with larger net worth and/or engaged in substantial interstate commerce, any judgment awarding punitive damages would be unconstitutional insofar as Texas law: permits arbitrary, coercive, capricious and fundamentally unfair punishments; allows bias and prejudice to infect verdicts imposing punishment; does not significantly constrain a jury's or court's discretion in assessing and/or reviewing exemplary damages; does not meaningfully protect against excessive punitive damages awards; does not ensure reasonable proportionality between punitive damages awarded and legitimate state objectives for such damages; and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Texas and federal constitutions, as well as the Commerce Clause of the United States Constitution.

71.     Any award of punitive damages based on anything other than BHCP's conduct as alleged in Plaintiff's Complaint would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the due process provisions of the Texas Constitution, and the common law and public policies of the State of Texas.  Any other basis for awarding punitive damages in this case would not protect BHCP against impermissible multiple punishment for the same wrong.

72.     To the extent that Plaintiff's Complaint seeks recovery of punitive damages, it violates BHCP's rights to equal protection as provided in Article I, Section 3 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution.

73.     To the extent that Plaintiff's Complaint seeks recovery of punitive damages, it also violates BHCP's rights to contract, as provided in Article I, Section 16 of the Texas Constitution and Article I, Section 10 of the United States Constitution.

74.     Plaintiff's plea for punitive damages violates the Supremacy Clause of the United States Constitution (Article I, Section 10, Clause 1) and Article I, Section 16 of the Texas Constitution.

75.     Plaintiff's plea for punitive damages violates the separation of powers doctrine embodied in Article VI of the United States Constitution and Article I, Section 1 of the Texas Constitution.

76.     Imposition of punitive or exemplary damages violates the Sixth Amendment of the United States Constitution because BHCP is not informed of the nature and cause of the accusation against it; thus, the allegations are void for vagueness.

77.     Plaintiff's claims for punitive damages cannot be sustained to the extent that the damages sought are not subject to a predetermined limit (such as a maximum multiple of compensatory damages or a maximum amount) on the amount of punitive damages that a jury may impose.  Such an unrestricted award would violate BHCP's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution, the Texas Constitution, and the common law and public policies of the State of Texas.

78.     Any judgment awarding exemplary damages must be limited in accordance with Texas Civil Practice & Remedies Code § 41.008.  BHCP asserts all defenses and limitations on

punitive damages contained in Texas Civil Practice & Remedies Code Chapter 41.  BHCP also asserts that any judgment awarding exemplary damages may not exceed double the amount (if any) gained by BHCP or caused by it to be lost or damaged, whichever is greater.  To the extent that Chapter 41 of the Texas Civil Practice and Remedies Code authorizes greater punishments, it is in conflict with Section 12.51(c) of the Texas Penal Code and also violates BHCP's constitutional rights to due process and the constitutional prohibitions against excessive fines. To the extent that Chapter 41 authorizes jury consideration of (and judicial punishment based on) conduct that occurred in other states, it is unconstitutional not only under *BMW of North America v. Gore*, *State Farm v. Campbell*, *Philip Morris USA v. Williams*, and *Exxon Shipping Co. v. Baker*, but also under the Texas Supreme Court's analysis in *Coca Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 679-688 (Tex. 2006).

79.     To the extent that Texas Civil Practice & Remedies Code § 41.008 does not apply to limit the amount of punitive damages, then the amount of punitive damages must be limited in accordance with BHCP's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article I of the Texas Constitution, and the amount of punitive damages must bear a reasonable relationship to compensatory damages.

80.     Any claims for punitive damages against BHCP cannot be sustained because any award of punitive damages under Texas law without bifurcating the trial as to all punitive damages issues would violate BHCP's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article I of the Texas Constitution.

81.     BHCP adopts and incorporates by reference all defenses pleaded by other defendants except to the extent that they are inconsistent with BHCP's defenses pleaded in this Answer.

**WHEREFORE**, BHCP requests that Plaintiff's Complaint be dismissed with prejudice, that judgment be entered in favor of BHCP and against Plaintiff, and that BHCP be awarded the costs of this action, together with such other and further relief as may be appropriate.

### JURY DEMAND

BHCP hereby demands a trial by jury on all issues so triable.

> *s/ Terry Lueckenhoff*_____
> Terry Lueckenhoff, Bar #27810MO
> John E. Galvin, IL Bar #06205935
> Fox Galvin, LLC
> One S. Memorial Drive, 12th Floor
> St. Louis, MO  63102
> 314-588-7000
> 314-588-1965 (Facsimile)
> tlueckenhoff@foxgalvin.com
> jgalvin@foxgalvin.com
>
>
> *s/ Adam Hoeflich (w/ consent)*_____
> Adam Hoeflich, IL Bar #06209163
> Bartlit Beck Herman Palenchar & Scott LLP
> 54 West Hubbard Street, Suite 300
> Chicago, IL  60654
> 312-494-4400
> 312-494-4440 (Facsimile)
> adam.hoeflich@bartlit-beck.com
>
> *Attorneys for Defendant Bayer HealthCare Pharmaceuticals Inc.*

Dated:  September 12, 2011

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 12, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*s/ Terry Lueckenhoff*