## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

_____

| | |
|---|---|
| **IN RE: YASMIN AND YAZ** ) | **3:09-md-02100-DRH-PMF** |
| **(DROSPIRENONE) MARKETING, SALES** ) | |
| **PRACTICES AND PRODUCTS LIABILITY** ) | **MDL No. 2100** |
| **LITIGATION** ) | |

_____)

**This Document Relates to:**
_____

**ERIN MARTINO,**

     **Plaintiff,**

**v.**                                  **3:10-cv-13797-DRH-PMF**

**BAYER HEALTHCARE
PHARMACEUTICALS INC., BAYER
SCHERING PHARMA AG, BAYER
CORPORATION, BAYER
HEALTHCARE, LLC, BAYER
HEALTHCARE AG, and BAYER AG,**

     **Defendants.**
_____

## ANSWER AND ADDITIONAL DEFENSES OF
## DEFENDANT BAYER PHARMA AG,
## FORMERLY KNOWN AS BAYER SCHERING PHARMA AG

     Defendant Bayer Pharma AG, formerly known as Bayer Schering Pharma AG

(hereinafter "Bayer Pharma AG"), for its Answer to Plaintiff's First Amended Complaint (the

"Complaint")[1], states as follows:

_____

[1] Bayer Pharma AG states that, effective July 1, 2011, Bayer Schering Pharma AG was renamed
Bayer Pharma AG.  Bayer Pharma AG further states that Bayer Pharma AG is the same
corporate entity as Bayer Schering Pharma AG.  In this Answer, Bayer Pharma AG will respond
to allegations in the Complaint regarding Bayer Schering Pharma AG as referring to the
corporate entity now named Bayer Pharma AG.

In response to the unnumbered paragraph preceding paragraph 1, Bayer Pharma AG admits that YAZ® is a prescription combination oral contraceptive, and that YAZ® contains drospirenone and ethinyl estradiol.  Bayer Pharma AG denies that any of Plaintiff's alleged injuries or damages were caused by YAZ® and denies the remaining allegations in the unnumbered paragraph preceding paragraph 1.

1.      Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1.

2.      Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff was prescribed, purchased and ingested YAZ®.  Bayer Pharma AG denies that any of Plaintiff's alleged injuries were a result of the use of YAZ® or Yasmin®.  Because of the vagueness and ambiguity of the allegation that "YAZ®" is hereinafter "Yaz®/Yasmin®", Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of that allegation.  For a further response, in this Answer, Bayer Pharma AG responds to allegations regarding "YAZ®" as referring only to YAZ® and to allegations regarding "Yaz®/Yasmin®" as referring to YAZ® and/or Yasmin®.  Bayer Pharma AG admits that Bayer Pharma AG designed and developed YAZ® and Yasmin®.  Bayer Pharma AG denies that Bayer Pharma AG marketed, advertised or distributed YAZ® or Yasmin® in the United States.  Bayer Pharma AG denies any remaining allegations in paragraph 2.

3.      Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff was prescribed, purchased and ingested YAZ® and/or Yasmin®.  Bayer Pharma AG denies that any of Plaintiff's alleged injuries were a result of the use of YAZ® or Yasmin®.  Bayer Pharma AG admits that Bayer Pharma AG designed and developed YAZ® and Yasmin®.  Bayer Pharma AG denies that Bayer Pharma AG

marketed, advertised or distributed YAZ® or Yasmin® in the United States.  Bayer Pharma AG denies any remaining allegations in paragraph 3.

4.     Bayer Pharma AG admits that Plaintiff alleges damages in excess of Seventy-Five Thousand Dollars, exclusive of interest and costs.  Bayer Pharma AG denies any remaining allegations in paragraph 4.

5.     Bayer Pharma AG admits that Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.  Bayer Pharma AG denies any remaining allegations in paragraph 5.

6.     Bayer Pharma AG admits that Bayer Corporation is the sole member of Bayer HealthCare LLC, that Schering Berlin Inc. is wholly owned by Bayer HealthCare LLC, that Bayer HealthCare Pharmaceuticals Inc. is wholly owned by Schering Berlin Inc., and that Bayer HealthCare Pharmaceuticals Inc. is indirectly wholly owned by Bayer Corporation.  Bayer Pharma AG denies the remaining allegations in paragraph 6.

7.     Bayer Pharma AG admits that Bayer HealthCare Pharmaceuticals Inc. is a Delaware corporation with its principal place of business at 6 West Belt Road, Wayne, New Jersey 07470.  Bayer Pharma AG further admits that Bayer HealthCare Pharmaceuticals Inc. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc.  Bayer Pharma AG denies the remaining allegations in paragraph 7.

8.     The allegations in the first sentence in paragraph 8 state conclusions of law to which no response is required.  To the extent that a response is required, Bayer Pharma AG admits that Bayer HealthCare Pharmaceuticals Inc. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and that Bayer HealthCare Pharmaceuticals Inc. is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.  Bayer Pharma AG

denies the remaining allegations in the first sentence in paragraph 8.  Bayer Pharma AG admits

that Bayer HealthCare Pharmaceuticals Inc., formerly known as Berlex, Inc., formerly known as

Berlex Laboratories, Inc., packaged, promoted, marketed, distributed, labeled and sold YAZ®

and Yasmin® in the United States.  Bayer Pharma AG denies that Bayer HealthCare

Pharmaceuticals Inc., formerly known as Berlex, Inc., formerly known as Berlex Laboratories,

Inc., designed, developed or manufactured YAZ® or Yasmin®.  Bayer Pharma AG states that it

is generally aware that Bayer HealthCare Pharmaceuticals Inc., formerly known as Berlex, Inc.,

formerly known as Berlex Laboratories, Inc.'s products have been sold throughout the United

States, including in Texas, but Bayer Pharma AG generally is not aware of particular activities

conducted by Bayer HealthCare Pharmaceuticals Inc., formerly known as Berlex, Inc., formerly

known as Berlex Laboratories, Inc., in each particular state.  Bayer Pharma AG is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in the third sentence in paragraph 8.  Because of the vagueness and ambiguity of the remaining

allegations in paragraph 8, Bayer Pharma AG is without knowledge or information sufficient to

form a belief as to the truth of those allegations.

   9.  Bayer Pharma AG admits that Bayer HealthCare Pharmaceuticals Inc. distributes,

sells and markets YAZ® and Yasmin® in the United States.  Bayer Pharma AG denies that

Bayer HealthCare Pharmaceuticals Inc. develops, designs, licenses or manufactures YAZ® or

Yasmin®.  Because of the vagueness and ambiguity of the remaining allegations in the first

sentence in paragraph 9, Bayer Pharma AG is without knowledge or information sufficient to

form a belief as to the truth of those allegations.  Bayer Pharma AG states that it is generally

aware that Bayer HealthCare Pharmaceuticals Inc.'s products have been sold throughout the

United States, including in Texas, but Bayer Pharma AG generally is not aware of particular

activities conducted by Bayer HealthCare Pharmaceuticals Inc. in each particular state.  Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9.

10.     Bayer Pharma AG admits that Bayer HealthCare Pharmaceuticals Inc. is the holder of the approved New Drug Applications ("NDAs") for YAZ®.  Bayer Pharma AG denies any remaining allegations in paragraph 10.

11.     Bayer Pharma AG admits that Bayer HealthCare Pharmaceuticals Inc. is the holder of the approved New Drug Application ("NDA") for Yasmin®.  Bayer Pharma AG denies any remaining allegations in paragraph 11.

12.     Bayer Pharma AG admits that Bayer HealthCare LLC is a limited liability company formed in Delaware with its principal place of business at 555 White Plains Road, Tarrytown, New York 10591.  Bayer Pharma AG denies the remaining allegations in paragraph 12, except that Bayer Pharma AG admits that Bayer HealthCare LLC's principal place of business is in New York.

13.     Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14.     Bayer Pharma AG admits that Bayer Pharma AG, which was formerly known as Schering AG, is a German company with its principal place of business at Müllerstraße 178, 13353 Berlin, Germany.  Bayer Pharma AG admits that Bayer Pharma AG is a pharmaceutical company.  Bayer Pharma AG denies the remaining allegations in paragraph 14.  For a further response, Bayer Pharma AG states that it does not contest specific personal jurisdiction over Bayer Pharma AG in this action, but Bayer Pharma AG denies that general jurisdiction exists over Bayer Pharma AG in this action.

15.     The allegations in paragraph 15 state conclusions of law to which no response is required.  To the extent that a response is required, Bayer Pharma AG admits that Bayer Pharma AG was formerly known as Schering AG and that Bayer Pharma AG is the same corporate entity as Schering AG.  Bayer Pharma AG denies the remaining allegations in paragraph 15.

16.     Bayer Pharma AG admits that Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006.  For a further response, Bayer Pharma AG states that Bayer Schering Pharma AG was renamed Bayer Pharma AG effective July 1, 2011.  Bayer Pharma AG denies any remaining allegations in paragraph 16.

17.     Bayer Pharma AG denies the allegations in paragraph 17.

18.     Bayer Pharma AG admits that Bayer Pharma AG is the owner of all patents listed in the Orange Book for Yasmin®, and that Yasmin® is an oral contraceptive.  Bayer Pharma AG denies any remaining allegations in paragraph 18.

19.     Bayer Pharma AG admits that Bayer Pharma AG is the owner of all patents listed in the Orange Book for YAZ®, and that YAZ® is an oral contraceptive.  Bayer Pharma AG denies any remaining allegations in paragraph 19.

20.     Bayer Pharma AG admits that Bayer Pharma AG researched, developed and designed YAZ® and Yasmin®, that Bayer Pharma AG manufactures drospirenone and ethinyl estradiol, which are the progestin and estrogen contained in YAZ® and Yasmin®, that Bayer Pharma AG sells YAZ® and Yasmin® to Bayer HealthCare Pharmaceuticals Inc., that Bayer Pharma AG licensed, distributes and sells a generic equivalent of Yasmin® to Barr Laboratories, Inc., and that Bayer Pharma AG licensed and beginning in December 2010 distributes and sells a generic equivalent of YAZ® to Barr Laboratories, Inc.  Bayer Pharma AG denies that Bayer Pharma AG manufactures YAZ® or Yasmin® tablets.  Bayer Pharma AG denies that Bayer

Pharma AG markets YAZ® or Yasmin® in the United States.  Bayer Pharma AG denies that

Bayer Pharma AG licensed YAZ® or Yasmin®, and denies that Bayer Pharma AG licensed a

generic equivalent of YAZ® or a generic equivalent of Yasmin® in the United States other than

to Barr Laboratories, Inc.  Bayer Pharma AG denies that Bayer Pharma AG sells YAZ® or

Yasmin® to parties located in the United States other than Bayer HealthCare Pharmaceuticals

Inc., and denies that Bayer Pharma AG sells a generic equivalent of YAZ® or a generic

equivalent of Yasmin® to parties located in the United States other than Barr Laboratories, Inc.

Bayer Pharma AG denies that Bayer Pharma AG distributes YAZ® or Yasmin® in the United

States, and denies that Bayer Pharma AG distributes a generic equivalent of YAZ® or a generic

equivalent of Yasmin® in the United States other than to Barr Laboratories, Inc.  Because of the

vagueness and ambiguity of the remaining allegations in the first sentence in paragraph 20,

Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth

of those allegations.  Bayer Pharma AG denies the remaining allegations in paragraph 20.

     21.     Bayer Pharma AG admits that, prior to December 30, 2008, there was a German

company named Bayer HealthCare AG (the "company named Bayer HealthCare AG that existed

prior to December 30, 2008") that had its principal place of business in Leverkusen, Germany.

Bayer Pharma AG further states that, effective December 30, 2008, the company named Bayer

HealthCare AG that existed prior to December 30, 2008 was merged into Bayer Pharma AG and

ceased to exist.  Bayer Pharma AG further states that effective January 5, 2009, a separate

German company that was created in February 2008 was renamed Bayer HealthCare AG (the

"company now named Bayer HealthCare AG"), and that the company now named Bayer

HealthCare AG has its principal place of business in Leverkusen, Germany.  Bayer Pharma AG

denies the remaining allegations in paragraph 21.  For a further response, Bayer Pharma AG

states that neither the company named Bayer HealthCare AG that existed prior to December 30,

2008 nor the company now named Bayer HealthCare AG designed, researched, developed,

licensed, manufactured, tested, advertised, promoted, marketed, sold or distributed YAZ® or

Yasmin®.

      22.     Bayer Pharma AG denies the allegations in paragraph 22.

      23.     Bayer Pharma AG denies the allegations in paragraph 23.

      24.     Bayer Pharma AG admits that Bayer AG is a German company with its

headquarters in Leverkusen, North Rhine-Westphalia, Germany.  Bayer Pharma AG admits that

Bayer AG's business areas include material science and pharmaceuticals.  Bayer Pharma AG

denies the remaining allegations in paragraph 24.

      25.     Bayer Pharma AG denies the allegations in paragraph 25.

      26.     Bayer Pharma AG admits that Bayer Corporation, Bayer Pharma AG and the

company now named Bayer HealthCare AG are wholly owned by Bayer AG and that Bayer

HealthCare Pharmaceuticals Inc. and Bayer HealthCare LLC are indirectly owned by Bayer AG.

Bayer Pharma AG denies any remaining allegations in paragraph 26.

      27.     Bayer Pharma AG denies the allegations in paragraph 27.

      28.     Bayer Pharma AG denies the allegations in paragraph 28.

      29.     Bayer Pharma AG denies the allegations in paragraph 29.

      30.     Bayer Pharma AG admits that the Complaint contains allegations referring to

Bayer Pharma AG and other entities collectively as "Bayer" or "Defendants" or otherwise, but

Bayer Pharma AG is not answering the Complaint on behalf of any entity other than Bayer

Pharma AG, and is not answering allegations that are directed to any entity other than Bayer

Pharma AG.  Bayer Pharma AG accordingly denies the allegations in paragraph 30.

31.     The allegations in paragraph 31 state conclusions of law to which no response is required.  To the extent that a response is required, Bayer Pharma AG states that, on the face of the Complaint and assuming that Plaintiff's citizenship is properly alleged, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of different states and in which citizens of a foreign state are additional parties, with an amount in controversy allegedly exceeding $75,000, exclusive of interest and costs.  Bayer Pharma AG denies any remaining or inconsistent allegations in paragraph 31.

32.     The allegations in paragraph 32 state conclusions of law to which no response is required.  To the extent that a response is required, Bayer Pharma AG admits that, on the face of the Complaint, it was proper pursuant to Case Management Order No. 9, Agreed Order Regarding Direct Filing of Actions in the Southern District of Illinois, to file this case for purposes of pretrial proceedings directly in the multidistrict litigation captioned *In re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* Case No. 3:09-md-02100-DRH-PMF, MDL No. 2100, pending in the United States District Court for the Southern District of Illinois.  Bayer Pharma AG denies the allegations in paragraph 32 regarding that Order to the extent that they are inconsistent with the language of the Order or omit portions of the Order.  Bayer Pharma AG denies the remaining allegations in paragraph 32.

33.     Bayer Pharma AG admits that Plaintiff brings this case seeking certain damages. Bayer Pharma AG admits that YAZ® and Yasmin® are prescription oral contraceptives combining ethinyl estradiol and drospirenone.  Bayer Pharma AG admits that Bayer Pharma AG designed YAZ® and Yasmin® and that Bayer Pharma AG manufactured drospirenone and ethinyl estradiol, which are the progestin and estrogen contained in YAZ® and Yasmin®.  Bayer Pharma AG denies that Bayer Pharma AG manufactured YAZ® or Yasmin® tablets, and denies

that Bayer Pharma AG marketed or distributed YAZ® or Yasmin® in the United States.  Bayer

Pharma AG is without knowledge or information sufficient to form a belief as to the truth of the

allegations that Plaintiff ingested and used YAZ® or Yasmin® and that Plaintiff suffered the

injuries alleged.  Bayer Pharma AG denies that any of Plaintiff's alleged injuries were a result of

the use of YAZ® or Yasmin® and denies any remaining allegations in paragraph 33.

34.     Bayer Pharma AG admits that Bayer Pharma AG manufactured drospirenone and

ethinyl estradiol, which are the progestin and estrogen contained in the birth control pills YAZ®

and Yasmin®.   Bayer Pharma AG denies that Bayer Pharma AG manufactured YAZ® or

Yasmin® tablets, and denies that Bayer Pharma AG marketed YAZ® or Yasmin® in the United

States.  Bayer Pharma AG admits that YAZ® and Yasmin® are combination oral contraceptives

("COCs") containing an estrogen and a progestin.  Bayer Pharma AG further admits that COCs

prevent pregnancy through some combination of effects which may include the inhibition of

ovulation and changes in the cervical mucus (which increases the difficulty of sperm entry into

the uterus) and the endometrium (which reduces the likelihood of implantation).  Bayer Pharma

AG denies the remaining allegations in paragraph 34.

35.     Bayer Pharma AG admits that the United States Food and Drug Administration

(the "FDA") approved the New Drug Application for Yasmin® in 2001, and that the FDA

approved the first New Drug Application for YAZ® in 2006.  Bayer Pharma AG denies any

remaining allegations in paragraph 35.

36.     Bayer Pharma AG admits that YAZ® and Yasmin® contain the estrogen ethinyl

estradiol and the progestin drospirenone.  Bayer Pharma AG further admits that Yasmin®

contains 0.03 mg of ethinyl estradiol and 3 mg of drospirenone, and that YAZ® contains 0.02

mg of ethinyl estradiol and 3 mg of drospirenone.  Bayer Pharma AG denies any remaining allegations in paragraph 36.

37.     Bayer Pharma AG admits that YAZ® and Yasmin® contain drospirenone, and that Yasmin® was the first birth control pill approved by the FDA for use in the United States that contained the progestin drospirenone.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 37, Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of those allegations.

38.     Bayer Pharma AG admits that women using combination oral contraceptives in the 1960s were found to have an increased risk of arterial and venous thromboembolic events, compared to non-pregnant women who were not using combination oral contraceptives.  Bayer Pharma AG further admits that the risk associated with the use of combination oral contraceptives declined over the period that the estrogen content in combination oral contraceptives was decreased.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 38, Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of those allegations.

39.     Bayer Pharma AG admits that progestins were developed that have been referred to as "second generation" progestins, including levonorgestrel.  Because of the vagueness and ambiguity of the remaining allegations in the first sentence in paragraph 39, Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of those allegations.  Bayer Pharma AG denies the remaining allegations in paragraph 39 as stated.  Bayer Pharma AG admits that combination oral contraceptives using lower estrogen amounts were considered to have lower risks of arterial and venous thromboembolic events than combination oral

contraceptives using higher doses of estrogen.  Bayer Pharma AG denies the remaining allegations in paragraph 39.

40.    Bayer Pharma AG admits that progestins were developed that have been referred to as "third generation" progestins.  Bayer Pharma AG further admits that the labeling for all oral contraceptives contains a warning of the risk of deep vein thrombosis and pulmonary embolism.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 40, Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of those allegations.

41.    Bayer Pharma AG admits that both YAZ® and Yasmin® contain the estrogen ethinyl estradiol, and that ethinyl estradiol has been used in birth control pills approved by the FDA for use in the United States for decades.  Bayer Pharma AG denies any remaining allegations in paragraph 41.

42.    Bayer Pharma AG admits that drospirenone is a progestin.  Because of the vagueness and ambiguity of the remaining allegations in the first sentence in paragraph 42, Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of those allegations.  Bayer Pharma AG admits that YAZ®, Yasmin® and Ocella® contain drospirenone, and that Ocella® is a generic version of Yasmin®.  Bayer Pharma AG denies the remaining allegations in paragraph 42.

43.    Bayer Pharma AG denies the allegations in the first sentence in paragraph 43.  Bayer Pharma AG admits that drospirenone is a different chemical entity than the progestins that were used in so-called second generation combination oral contraceptives and accordingly, drospirenone may have certain effects that are different from those of so-called second generation progestins.  Bayer Pharma AG denies the remaining allegations in paragraph 43.

44.     Because of the vagueness and ambiguity of the allegation regarding what "[o]ne possible mechanism of action is", Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of that allegation.  Bayer Pharma AG denies the remaining allegations in paragraph 44.

45.     Because of the vagueness and ambiguity of the allegation regarding what "[a]nother possible mechanism of action is", Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of that allegation.  Bayer Pharma AG admits that drospirenone may potentially increase potassium levels in the blood.  Bayer Pharma AG further states that the labeling for YAZ® and Yasmin® provides appropriate warnings regarding the risks associated with drospirenone.  Bayer Pharma AG denies that YAZ® or Yasmin® when used in accordance with the labeling are associated with hyperkalemia at the level that can cause heart rhythm disturbances or be fatal.  Bayer Pharma AG admits that severe hyperkalemia from other causes may result in certain heart rhythm disturbances or be fatal.  Bayer Pharma AG denies the remaining allegations in paragraph 45.

46.     Bayer Pharma AG denies the allegations in paragraph 46.

47.     Bayer Pharma AG admits that Yasmin® has been sold in the United States since 2001 and that YAZ® has been sold in the United States since 2006.  Bayer Pharma AG further admits that since 2001, the FDA received hundreds of MedWatch forms regarding women reportedly using YAZ® or Yasmin® in which adverse events including death were reported.  For a further response, the submission of a MedWatch form to the FDA does not constitute an admission or assertion that the use of YAZ® or Yasmin® caused or contributed to the event that is the subject of the MedWatch form.  Bayer Pharma AG further responds that with respect to a number of the reports of adverse events including death submitted to the FDA, the use of YAZ®

13

or Yasmin® has not been confirmed.  Bayer Pharma AG further responds that all birth control pills approved for use in the United States are associated with reports of adverse events including death, and that the labeling for YAZ® and Yasmin® provides appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.  Bayer Pharma AG denies the remaining allegations in paragraph 47.

48.     Bayer Pharma AG admits that the British Medical Journal published an article regarding Yasmin® in April 2002 and a paper regarding Yasmin® in February 2003.  Bayer Pharma AG denies the allegations in paragraph 48 regarding the contents of the April 2002 article and the February 2003 paper to the extent that they are inconsistent with the language of the April 2002 article or the February 2003 paper or omit portions of the April 2002 article or the February 2003 paper.  Bayer Pharma AG denies the remaining allegations in paragraph 48.

49.     Bayer Pharma AG admits that during the period January 1, 2004 through September 30, 2008, the FDA received over fifty MedWatch forms regarding women reportedly using YAZ® or Yasmin® in which deaths were reported, including MedWatch forms regarding women in their child-bearing years reportedly using YAZ® or Yasmin® in which deaths relating to a variety of causes were reported.  Bayer Pharma AG further admits that during that same period, the MedWatch forms received by the FDA concerning women who reportedly used YAZ® or Yasmin® in which deaths were reported included MedWatch forms concerning women as young as 17 years old.  For a further response, the submission of a MedWatch form to the FDA does not constitute an admission or assertion that the use of YAZ® or Yasmin® caused or contributed to the event that is the subject of the MedWatch form.  Bayer Pharma AG further responds that with respect to a number of the reports of death submitted to the FDA, the use of YAZ® or Yasmin® has not been confirmed.  In addition, Bayer Pharma AG responds that all

14

birth control pills approved for use in the United States are associated with reports of adverse events including death, and that the labeling for YAZ® and Yasmin® provides appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.  Bayer Pharma AG denies the remaining allegations in paragraph 49.

50.     Bayer Pharma AG denies the allegations in the first sentence in paragraph 50. Bayer Pharma AG admits that the British Medical Journal published a study authored by Lidegaard, et al., titled Hormonal contraception and risk of venous thromboembolism: national follow-up study.  BMJ 2009;339:b2890.  Bayer Pharma AG denies the allegations regarding the study's conclusion, which are both incomplete and misleading as alleged, and which fail to acknowledge the numerous limitations recognized by the authors of the study.  Bayer Pharma AG further admits that the British Medical Journal published a study authored by van Hylckama Vlieg, Vandenbroucke, et al., titled The venous thrombotic risk of oral contraceptives, effects of oestrogen dose and progestogen type: results of the MEGA case-control study.  BMJ 2009;339:b2921.  Bayer Pharma AG denies the remaining allegations in paragraph 50.

51.     Bayer Pharma AG denies the allegations in paragraph 51.

52.     Bayer Pharma AG denies that Bayer Pharma AG markets YAZ® or Yasmin® in the United States.  Bayer Pharma AG denies any remaining allegations in paragraph 52.

53.     Bayer Pharma AG admits that YAZ® and Yasmin® differ from other birth control pills because they contain the progestin drospirenone.  Bayer Pharma AG further responds that the labeling for YAZ® and Yasmin® provides appropriate warnings regarding the risks associated with drospirenone.  Bayer Pharma AG denies the remaining allegations in paragraph 53.

54.     Bayer Pharma AG denies that Berlex Laboratories, Inc. was sold to Bayer Pharma AG in 2006.  Bayer Pharma AG admits that Berlex Laboratories, Inc., now known as Bayer HealthCare Pharmaceuticals Inc., promoted Yasmin®.  Bayer Pharma AG admits that a television advertisement for Yasmin® contained the statement that Plaintiff quotes, as well as other statements, which Plaintiff omits.  Bayer Pharma AG denies the remaining allegations in paragraph 54.

55.     Bayer Pharma AG admits that the FDA sent a letter dated July 10, 2003 relating to Yasmin® to Berlex Laboratories, Inc.  Bayer Pharma AG denies the allegations in paragraph 55 regarding the contents of that letter to the extent that they are inconsistent with the language of the letter or omit portions of the letter.  Bayer Pharma AG denies the remaining allegations in paragraph 55.

56.     Bayer Pharma AG admits that the FDA sent a letter dated July 10, 2003 relating to Yasmin® to Berlex Laboratories, Inc.  Bayer Pharma AG denies the allegations in paragraph 56 regarding the contents of that letter to the extent that they are inconsistent with the language of the letter or omit portions of the letter.  Bayer Pharma AG denies the remaining allegations in paragraph 56.

57.     Bayer Pharma AG denies that Bayer Pharma AG advertised YAZ® or Yasmin® in the United States.  Bayer Pharma AG denies the remaining allegations in paragraph 57.

58.     Bayer Pharma AG denies that Bayer Pharma AG advertised YAZ® or Yasmin® in the United States.  Bayer Pharma AG denies any remaining allegations in paragraph 58.

59.     Bayer Pharma AG denies the allegations in paragraph 59.

60.     Bayer Pharma AG denies the allegations in paragraph 60.

61.     Bayer Pharma AG denies the allegations in paragraph 61.

62.     Bayer Pharma AG denies the allegations in paragraph 62 to the extent that they are inconsistent with relevant Consent Decrees or omit portions of those Consent Decrees. Bayer Pharma AG denies the remaining allegations in paragraph 62.

63.     Bayer Pharma AG denies that Bayer Pharma AG marketed YAZ® or Yasmin® in the United States.  Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63, except that Bayer Pharma AG denies that any of Plaintiff's alleged injuries were a result of the use of YAZ® or Yasmin®.

64.     Bayer Pharma AG denies the allegations in paragraph 64.

65.     Bayer Pharma AG denies the allegations in paragraph 65.

66.     Bayer Pharma AG denies the allegations in paragraph 66.

67.     Bayer Pharma AG denies the allegations in paragraph 67.

68.     Bayer Pharma AG denies the allegations in paragraph 68.

69.     Bayer Pharma AG denies the allegations in paragraph 69.

70.     Bayer Pharma AG denies the allegations in paragraph 70.

## COUNT I

71.     Bayer Pharma AG incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

72.     Bayer Pharma AG admits that Bayer Pharma AG designed YAZ® and Yasmin®, that Bayer Pharma AG manufactures drospirenone and ethinyl estradiol, which are the progestin and estrogen contained in YAZ® and Yasmin®, and that Bayer Pharma AG sells and supplies YAZ® and Yasmin® to Bayer HealthCare Pharmaceuticals Inc.  Bayer Pharma AG denies that Bayer Pharma AG manufactures YAZ® or Yasmin® tablets, denies that Bayer Pharma AG distributes YAZ® or Yasmin® in the United States, and denies that Bayer Pharma AG sells or

supplies YAZ® or Yasmin® to parties located in the United States other than Bayer HealthCare Pharmaceuticals Inc.  Bayer Pharma AG denies any remaining allegations in paragraph 72.

73.     Bayer Pharma AG admits that Bayer Pharma AG designed YAZ® and Yasmin®, that Bayer Pharma AG manufactured drospirenone and ethinyl estradiol, which are the progestin and estrogen contained in YAZ® and Yasmin®, and that Bayer Pharma AG sold and supplied YAZ® and Yasmin® to Bayer HealthCare Pharmaceuticals Inc.  Bayer Pharma AG denies that Bayer Pharma AG manufactured YAZ® or Yasmin® tablets, denies that Bayer Pharma AG distributed YAZ® or Yasmin® in the United States, and denies that Bayer Pharma AG sold or supplied YAZ® or Yasmin® to parties located in the United States other than Bayer HealthCare Pharmaceuticals Inc.  Bayer Pharma AG admits that Bayer Pharma AG expected YAZ® and Yasmin® to reach patients, who were prescribed YAZ® or Yasmin® by physicians in accordance with FDA-approved labeling, without substantial change from the condition in which YAZ® and Yasmin® were sold and supplied to Bayer HealthCare Pharmaceuticals Inc. by Bayer Pharma AG.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 73, Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of those allegations.

74.     Bayer Pharma AG denies the allegations in paragraph 74.

75.     Bayer Pharma AG denies the allegations in paragraph 75.

76.     Bayer Pharma AG denies the allegations in paragraph 76.

## COUNT II

77.     Bayer Pharma AG incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

78.     Bayer Pharma AG admits that Bayer Pharma AG designed and tested YAZ® and Yasmin®, that Bayer Pharma AG manufactured drospirenone and ethinyl estradiol, which are

18

the progestin and estrogen contained in YAZ® and Yasmin®, and that Bayer Pharma AG sold and supplied YAZ® and Yasmin® to Bayer HealthCare Pharmaceuticals Inc.  Bayer Pharma AG denies that Bayer Pharma AG manufactured YAZ® or Yasmin® tablets, denies that Bayer Pharma AG distributed or marketed YAZ® or Yasmin® in the United States, and denies that Bayer Pharma AG sold or supplied YAZ® or Yasmin® to parties located in the United States other than Bayer HealthCare Pharmaceuticals Inc.  Bayer Pharma AG admits that Bayer Pharma AG expected YAZ® and Yasmin® to reach patients, who were prescribed YAZ® or Yasmin® by physicians in accordance with FDA-approved labeling, without substantial change from the condition in which YAZ® and Yasmin® were sold and supplied to Bayer HealthCare Pharmaceuticals Inc. by Bayer Pharma AG.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 78, Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of those allegations.

79.    Bayer Pharma AG denies the allegations in paragraph 79.

80.    Bayer Pharma AG denies the allegations in paragraph 80.

81.    Bayer Pharma AG denies the allegations in paragraph 81.  For a further response, Bayer Pharma AG states that the FDA-approved labeling for YAZ® and Yasmin® provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.

82.    Bayer Pharma AG denies the allegations in paragraph 82.

83.    Bayer Pharma AG denies the allegations in paragraph 83.

84.    Bayer Pharma AG denies the allegations in paragraph 84.

## COUNT III

85.    Bayer Pharma AG incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

86.     Bayer Pharma AG denies the allegations in paragraph 86.

87.     Bayer Pharma AG denies the allegations in paragraph 87.

88.     Bayer Pharma AG denies the allegations in paragraph 88.

89.     Bayer Pharma AG denies the allegations in paragraph 89.

**COUNT IV**

90.     Bayer Pharma AG incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

91.     The allegations in paragraph 91 state conclusions of law to which no response is required.  To the extent that a response is required, Bayer Pharma AG denies that Bayer Pharma AG violated any applicable duty relating to YAZ® or Yasmin®, including any duty with respect to the design, manufacture, sale, testing, labeling, marketing, promotion or distribution of YAZ® or Yasmin®.  Bayer Pharma AG further denies that Bayer Pharma AG manufactured YAZ® or Yasmin® tablets, denies that Bayer Pharma AG labeled, marketed, promoted, distributed or advertised YAZ® or Yasmin® in the United States, denies that Bayer Pharma AG sold YAZ® or Yasmin® to parties located in the United States other than Bayer HealthCare Pharmaceuticals Inc., and denies that any alleged communication by Bayer Pharma AG regarding YAZ® or Yasmin® was untruthful.  For a further response, Bayer Pharma AG states that the FDA-approved labeling for YAZ® and Yasmin® provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.  Because of the vagueness and ambiguity of the remaining allegations in paragraph 91, Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of those allegations.

92.     Bayer Pharma AG denies the allegations in paragraph 92.

93.     Bayer Pharma AG denies the allegations in paragraph 93.

94.     Bayer Pharma AG denies the allegations in paragraph 94.  For a further response, Bayer Pharma AG states that the FDA-approved labeling for YAZ® and Yasmin® provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.

95.     Bayer Pharma AG denies the allegations in paragraph 95.

96.     Bayer Pharma AG denies the allegations in paragraph 96.

97.     Bayer Pharma AG denies the allegations in paragraph 97.

**COUNT V**

98.     Bayer Pharma AG incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

99.     Bayer Pharma AG admits that Bayer Pharma AG designed YAZ® and Yasmin®, that Bayer Pharma AG manufactures drospirenone and ethinyl estradiol, which are the progestin and estrogen contained in YAZ® and Yasmin®, and that Bayer Pharma AG sells and supplies YAZ® and Yasmin® to Bayer HealthCare Pharmaceuticals Inc.  Bayer Pharma AG denies that Bayer Pharma AG manufactures YAZ® or Yasmin® tablets, denies that Bayer Pharma AG distributes or markets YAZ® or Yasmin® in the United States, and denies that Bayer Pharma AG sells or supplies YAZ® or Yasmin® to parties located in the United States other than Bayer HealthCare Pharmaceuticals Inc.  Bayer Pharma AG denies any remaining allegations in paragraph 99.

100.    Bayer Pharma AG denies the allegations in paragraph 100.  For a further response, Bayer Pharma AG states that the FDA-approved labeling for YAZ® and Yasmin® provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.

101.    Bayer Pharma AG denies the allegations in paragraph 101.

102.    Bayer Pharma AG denies the allegations in paragraph 102.

103.    Bayer Pharma AG denies the allegations in paragraph 103.

104.    Bayer Pharma AG denies the allegations in paragraph 104.

105.    Bayer Pharma AG denies the allegations in paragraph 105.  For a further response, Bayer Pharma AG states that the FDA-approved labeling for YAZ® and Yasmin® provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.

106.    Bayer Pharma AG denies the allegations in paragraph 106.

107.    Bayer Pharma AG denies the allegations in paragraph 107.

## COUNT VI

108.    Bayer Pharma AG incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

109.    The allegations in the first sentence in paragraph 109 state conclusions of law to which no response is required.  To the extent that a response is required, Bayer Pharma AG denies the allegations in paragraph 109 as they pertain to Bayer Pharma AG.  For a further response, Bayer Pharma AG states that YAZ® and Yasmin® were approved by the FDA for sale in the United States for the indications in their respective FDA-approved labeling, which labeling provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.  Bayer Pharma AG denies the remaining allegations in paragraph 109.

110.    Bayer Pharma AG denies the allegations in paragraph 110.

111.    Bayer Pharma AG denies the allegations in paragraph 111.

112.    Bayer Pharma AG denies the allegations in paragraph 112.

## COUNT VII

113.    Bayer Pharma AG incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

114.    The allegations in paragraph 114 state conclusions of law to which no response is required.  To the extent that a response is required, Bayer Pharma AG denies the allegations in paragraph 114 as they pertain to Bayer Pharma AG.  For a further response, Bayer Pharma AG states that YAZ® and Yasmin® were approved by the FDA for sale in the United States for the indications in their respective FDA-approved labeling, which labeling provided appropriate warnings regarding the risks associated with the use of YAZ® and Yasmin®.  Bayer Pharma AG denies any remaining allegations in paragraph 114.

115.    Bayer Pharma AG is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Plaintiff relied upon and whether that alleged reliance was reasonable.  Bayer Pharma AG denies the remaining allegations in paragraph 115.

116.    Bayer Pharma AG denies the allegations in paragraph 116.

117.    Bayer Pharma AG denies the allegations in paragraph 117.

118.    Bayer Pharma AG denies the allegations in paragraph 118.

## COUNT VIII

119.    Bayer Pharma AG incorporates by reference its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

120.    The allegations in paragraph 120 state conclusions of law to which no response is required.  To the extent that a response is required, Bayer Pharma AG denies the allegations regarding the Texas Deceptive Trade Practices Act to the extent that they are inconsistent with the language of the Act or omit relevant portions of the Act, or are inconsistent with case law

interpreting the Act.  Bayer Pharma AG denies that Plaintiff is entitled to any relief under the Act and denies any remaining allegations in paragraph 120.

121.    The allegations in paragraph 121 state conclusions of law to which no response is required.  To the extent that a response is required, Bayer Pharma AG  denies the allegations in paragraph 121.

122.    The allegations in paragraph 122 state conclusions of law to which no response is required.  To the extent that a response is required, Bayer Pharma AG  denies the allegations in paragraph 122.

123.    Bayer Pharma AG denies the allegations in paragraph 123.

124.    The allegations in paragraph 124 state conclusions of law to which no response is required.  To the extent that a response is required, Bayer Pharma AG  denies the allegations in paragraph 124.

125.    Bayer Pharma AG denies the allegations in paragraph 125.

126.    Bayer Pharma AG denies the allegations in paragraph 126.

127.    Bayer Pharma AG denies that Plaintiff is entitled to any relief, including but not limited to the relief requested in the "Wherefore" clause of the Complaint.

128.    Bayer Pharma AG denies each and every allegation in the Complaint that relates to or is directed to Bayer Pharma AG unless such allegations are expressly admitted in this Answer.

**ADDITIONAL DEFENSES**

Discovery and investigation may reveal that one or more of the following additional defenses should be available to Bayer Pharma AG in this matter.  Bayer Pharma AG accordingly reserves the right to assert these separate and additional defenses.  Upon completion of discovery,

if the facts warrant, Bayer Pharma AG may withdraw any of these additional defenses as may be appropriate.  Bayer Pharma AG further reserves the right to amend its Answer and defenses, and to assert additional defenses and other claims, as this matter proceeds.

Further answering, and by way of additional defense, Bayer Pharma AG states as follows:

1.     Plaintiff's Complaint, and each and every count contained therein, fails to state a cause of action or claim upon which relief can be granted.

2.     Some or all of Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or statutes of repose.

3.     Plaintiff's claims are barred, in whole or in part, by laches, waiver and/or estoppel.

4.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate Plaintiff's alleged damages.

5.     The acts and omissions of Plaintiff caused and/or contributed to the alleged damages, thereby barring or reducing the amount of recovery under the doctrines of contributory negligence and/or comparative negligence.  Plaintiff's recovery, if any, therefore is barred or should be apportioned in accordance with applicable law.

6.     The alleged injuries sustained by Plaintiff, if any, were caused, in whole or in part, by pre-existing physical, medical, and/or physiological conditions, for which Bayer Pharma AG has no legal responsibility.

7.     If Plaintiff suffered injuries as alleged in the Complaint, which is expressly denied, such injuries arose from, and were caused by, risks, hazards, and dangers knowingly

assumed by Plaintiff.  Plaintiff's recovery accordingly is barred or should be reduced by Plaintiff's assumption of the risk.

8.      If the injuries claimed by Plaintiff were related to the use of YAZ® and/or Yasmin®, which is expressly denied, any such injuries were the result of an idiosyncratic or allergic reaction to YAZ® and/or Yasmin®.

9.      The injuries and damages claimed by Plaintiff, if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of Bayer Pharma AG was not the proximate and/or competent producing cause of such alleged injuries and damages.

10.      The injuries and damages claimed by Plaintiff, if any, are barred or must be reduced because those damages arose from the acts or omissions of persons or entities other than Bayer Pharma AG for whom Bayer Pharma AG has no legal responsibility.

11.      If Plaintiff sustained the injuries or incurred the expenses as alleged, which is expressly denied, said injuries or expenses were caused by the unforeseeable alteration, improper handling or other unforeseeable misuse, or use inconsistent with the labeling of the prescription drugs YAZ® and/or Yasmin®.  Plaintiff's recovery is accordingly barred.

12.      The alleged injuries and damages, if any, were the result of unavoidable circumstances that could not have been prevented by any person, including Bayer Pharma AG.

13.      Plaintiff's claims are barred because the benefits of YAZ® and Yasmin® outweigh the risks, if any, that might be associated with the products.

14.      The claims in the Complaint are barred in whole or in part by the learned intermediary doctrine.

15.     Plaintiff's Complaint fails to state a claim upon which relief can be granted in that the methods, standards, and techniques utilized with respect to the design, manufacture, marketing and sale of YAZ® and Yasmin®, including but not limited to adequate warnings and instructions with respect to the products' use included in the products' package inserts and other literature, conformed to the applicable state of the art.  YAZ® and Yasmin®, including their labeling approved by the FDA, complied with the state of scientific and medical knowledge available at the time.  Plaintiff's recovery accordingly is barred.

16.     Plaintiff's claims are barred because YAZ® and Yasmin® were neither defective nor unreasonably dangerous in their design, manufacture or marketing and were reasonably safe and reasonably fit for their intended uses, thereby barring Plaintiff's recovery.

17.     The warnings and instructions accompanying YAZ® and Yasmin® at the time of the occurrence or injuries alleged by Plaintiff were legally adequate warnings and instructions.

18.     Plaintiff's claims are barred as a matter of law pursuant to relevant provisions of the Restatement (Third) of Torts and the Restatement (Second) of Torts, including, but not limited to, § 402A, comment k.

19.     Bayer Pharma AG gives notice that to the extent that the sophisticated purchaser doctrine is applicable to any of the allegations in the Complaint, Bayer Pharma AG intends to rely upon same in defense of this action.

20.     The prescription drugs YAZ® and Yasmin® complied with the applicable product safety regulations promulgated by the FDA.  Compliance with such regulations demonstrates that due care was exercised with respect to the design, manufacture, testing, marketing and sale of these prescription drugs, and that they were neither defective nor unreasonably dangerous.  Plaintiff's recovery is accordingly barred.

21.     Any claims by Plaintiff relating to alleged communications with regulatory agencies of the United States government are barred in whole or in part by operation of applicable law, including First and Fourteenth Amendment rights to petition the government.

22.     Plaintiff's claims are barred in whole or in part because the commercial speech relating to YAZ® and Yasmin® is protected under the First Amendment of the United States Constitution and the applicable state constitution.

23.     Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the content of warnings and labeling for prescription drugs.

24.     Plaintiff's claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution by reason of the federal regulation of prescription drug manufacturing, testing, marketing, and labeling.

25.     Plaintiff cannot state a claim upon which relief may be granted with regard to warnings and labeling for prescription drugs because the remedy sought by Plaintiff is subject to the exclusive regulation of the FDA.

26.     This Court should abstain from adjudicating Plaintiff's claims relating to warnings and labeling in deference to the interpretation of regulations relating to prescription drug labeling by the FDA.

27.     Plaintiff did not detrimentally rely on any labeling, warnings or information concerning YAZ® and/or Yasmin®.

28.     Applicable law does not recognize a post-sale duty to warn in the present circumstances.  Accordingly, the Complaint fails to state a claim upon which relief may be granted for inadequate post-sale marketing or post-sale duty to warn.

29.     Upon information and belief, each item of economic loss alleged in the Complaint was, or with reasonable certainty will be, replaced or indemnified in whole or in part by collateral sources.

30.     To the extent that Plaintiff's Complaint seeks recovery for benefits entitled to be received or actually received from any other source for injuries alleged in the Complaint, such benefits are not recoverable in this action under applicable law.

31.     To the extent that Plaintiff's claims have been settled or Plaintiff will in the future settle with any person or entity with respect to the injuries asserted in the Complaint, the liability of Bayer Pharma AG, if any, should be reduced accordingly.

32.     Plaintiff's claims may be barred, in whole or in part, due to res judicata, collateral estoppel, or by release of claims.

33.     Plaintiff's Complaint fails to state a claim upon which relief can be granted as to costs, attorneys' fees, expenses, pre-judgment interest, treble damages or successor liability.

34.     Plaintiff's Complaint fails to join indispensable parties necessary for the just adjudication of this matter.

35.     Plaintiff's Complaint fails to state a claim upon which relief can be granted for several or joint and several liability.

36.     Plaintiff's claims for breach of warranty are barred because Plaintiff failed to give timely notice of any alleged breach of warranty.

37.     Bayer Pharma AG did not sell or distribute YAZ® or Yasmin® directly to Plaintiff, and Plaintiff did not receive or rely upon any representations or warranties as alleged in the Complaint.  Plaintiff's claims for breach of warranty are barred by lack of privity between Plaintiff and Bayer Pharma AG.

38.     Plaintiff's claims for breach of warranty, express or implied, are barred by the applicable state's Uniform Commercial Code or other applicable law.

39.     Plaintiff's Complaint fails to state a claim for fraud, misrepresentation and/or deception, and fails to allege the circumstances constituting fraud with the particularity required by the Federal Rules of Civil Procedure.

40.     Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

41.     Bayer Pharma AG denies any conduct for which punitive or exemplary damages could or should be awarded and denies that sufficient evidence has been produced to support or sustain the imposition of punitive damages pursuant to the applicable standard(s) of proof.

42.     Permitting recovery of punitive or exemplary damages in this case would be unconstitutionally vague and/or overbroad and would violate Bayer Pharma AG's constitutional rights as secured by the Fifth and Seventh Amendments to the United States Constitution, would violate its rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution and the prohibition against excessive fines in the United States Constitution, and would contravene other provisions of the United States Constitution and any applicable state constitution.

43.     Plaintiff cannot recover punitive or exemplary damages against Bayer Pharma AG because such an award, which is penal in nature, would violate Bayer Pharma AG's constitutional rights under the United States Constitution and any applicable state constitution, unless Bayer Pharma AG is afforded the same procedural safeguards as are criminal defendants, including but not limited to the right to avoid self incrimination, the right to forego production

and disclosure of incriminating documents and the right to the requirement of a level of proof beyond a reasonable doubt.

44.     Any imposition of punitive or exemplary damages in this case would contravene the Commerce Clause of the United States Constitution, in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

45.     With respect to Plaintiff's demand for punitive or exemplary damages, Bayer Pharma AG specifically incorporates by reference any and all standards or limitations regarding the determination and enforceability of punitive or exemplary damages awards under applicable state law or other applicable law.

46.     Any award of punitive or exemplary damages is barred to the extent that it is inconsistent with the standards and limitations set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605 (2008).

47.     No act or omission of Bayer Pharma AG was malicious, with deliberate oppression, wantoness, aggravated or egregious fraud and/or with intentional disregard of Plaintiff's safety and rights, as alleged in the Complaint.  No act or omission of Bayer Pharma AG was fraudulent, malicious or grossly negligent.  Accordingly, Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

48.     Plaintiff's claims for punitive or exemplary damages as set forth in the Complaint are barred by 735 ILCS 5/2-604.1.

49.     Plaintiff's Complaint fails to state a claim upon which relief can be granted under the Texas Deceptive Trade Practices Act because of the exemption contained in § 17.49(e) of the

Texas Business and Commerce Code.  In the alternative, Plaintiff's Complaint fails to state a claim for unlawful conduct under the Texas Deceptive Trade Practices Act because Bayer Pharma AG completely complied with the applicable law in connection with YAZ® and Yasmin®.

50.      Plaintiff's Complaint fails to state a claim for misleading, unfair or deceptive business practices under the Texas Deceptive Trade Practices Act because no act or omission of Bayer Pharma AG regarding YAZ® or Yasmin® was misleading, unfair or deceptive.

51.      Plaintiff's claims are barred in whole or in part because the Texas Deceptive Trade Practices Act is insufficiently definite to provide adequate or fair notice of the conduct proscribed, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the due process protections of the applicable state constitution.

52.      Plaintiff's claims are barred in whole or in part because the Texas Deceptive Trade Practices Act unconstitutionally burdens interstate business practices relating to prescription drugs, which are heavily regulated by the FDA.

53.      Plaintiff's action should be stayed or dismissed because Plaintiff has not exhausted the administrative remedies as required under the Texas Deceptive Trade Practices Act.

54.      Plaintiff's claims under the Texas Deceptive Trade Practices Act are barred in whole or in part because there was no intentional or knowing conduct which would allow an award of mental anguish damages to Plaintiff under § 17.50(b) of the Texas Deceptive Trade Practices Act.

55.     Plaintiff failed to provide sixty-day pre-suit notice as required by § 17.505(a) of the Texas Deceptive Trade Practices Act.

56.     This Court is an improper venue for the trial of this action.

57.     This Court is not the proper forum for the trial of this action and is not a convenient forum for the just adjudication of Plaintiff's claims.

58.     Plaintiff's claims for breach of warranty, express or implied, are barred by the Texas Business and Commerce Code or other applicable law.

59.     Plaintiff's claims are barred, in whole or in part, and Bayer Pharma AG is entitled to a presumption of no liability under Texas Civil Practice and Remedies Code §§ 82.001 and 82.007.

60.     Bayer Pharma AG is unaware at this time of any settlements by any alleged joint tortfeasor.  In the event any settlement has been or will be made by any alleged joint tortfeasor, then Bayer Pharma AG is entitled to a full credit, offset, pro rata reduction, or percentage reduction, based on the percentage of fault attributable to each settling party, person, or other entity herein, and Bayer Pharma AG makes known to the other parties and to the Court that it will avail itself of its rights under Texas Civil Practice & Remedies Code §§ 33.012 and 33.013.

61.     Plaintiff's Complaint, to the extent that it seeks recovery of punitive damages, violates Article I, Section 13 of the Texas Constitution, and it violates Bayer Pharma AG's rights to substantive and procedural due process as provided in Article I, Section 19 of the Texas Constitution and the Fifth and Fourteenth Amendments of the United States Constitution.  At a minimum, any award of punitive damages must be based upon clear and convincing evidence and proven beyond a reasonable doubt.

62.     Any judgment awarding punitive damages based on Bayer Pharma AG's dissimilar conduct or acts; any acts or conduct not aimed toward Plaintiff; any acts or conduct occurring outside the State of Texas that may have been lawful where they occurred; any acts or conduct, independent from the acts or conduct that allegedly harmed the Plaintiff whose claims are being tried; or any acts or conduct lacking a nexus (or which bear no relation) to the specific harm alleged by the Plaintiff whose claims are being tried, would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the due process provisions of the Texas Constitution, and the common law and public policies of the State of Texas.  Awarding punitive damages in this case based on any of those impermissible factors would effectively adjudicate the merits of other persons' hypothetical claims against Bayer Pharma AG; it would create the possibility of multiple punitive damages awards for the same conduct; and it would violate the United States Supreme Court's pronouncements in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605 (2008).

63.     Any judgment awarding punitive damages under Texas law without proof of every element beyond a reasonable doubt would violate Bayer Pharma AG's rights under Sections 10, 14 and 19 of Article I of the Texas Constitution.  In addition, the assessment of punitive damages, a remedy that is essentially criminal in nature, without the protections found in the Texas Code of Criminal Procedure and the Texas Penal Code, constitutes infliction of a criminal penalty without the proper safeguards in violation of Sections 10, 14 and 19 of Article I of the Texas Constitution.

64.     Unless the amount of punitive damages is required to be established by clear and convincing evidence under Texas law, any judgment awarding punitive damages would violate Bayer Pharma AG's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article I of the Texas Constitution.

65.     Jury instructions under Texas law are unconstitutional to the extent that they: (1) do not provide any standard of sufficient clarity for determining the appropriateness, or the appropriate size, of any punitive damages award; (2) do not instruct on the limits of punitive damages imposed by the applicable principles of deterrence and punishment; (3) do not expressly prohibit juries from awarding punitive damages or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics; (4) permit juries to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; (5) fail to instruct that any punitive damages juries may assess must bear a reasonable relationship to the harm caused to the plaintiff whose claims are being tried; (6) fail to instruct that punitive damages cannot be imposed for alleged harm to other plaintiffs or to non-parties; and (7) fail to instruct that the amount of criminal fines or civil penalties set by statute or historically imposed for like misconduct should be considered as one indicator of an appropriate range of punishment.  Any judgment awarding punitive damages utilizing Texas statutory punitive damages instructions would violate Bayer Pharma AG's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article I of the Texas Constitution.

66.     An award of punitive damages based on conduct or acts committed by those who are not Bayer Pharma AG's vice-principals would violate the Due Process Clause of the

Fourteenth Amendment to the United States Constitution, the due process provisions of the Texas Constitution, and the common law and public policies of the State of Texas and would be erroneous.

67.     To the extent that Plaintiff's pleas for punitive damages expose Bayer Pharma AG to double jeopardy or call for Bayer Pharma AG to be punished more than once for the same conduct, Plaintiff's pleas violate Bayer Pharma AG's rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 14 and 19 of the Texas Constitution.

68.     To the extent that Plaintiff seeks punitive damages, either unlimited or limited, the Complaint seeks excessive fines in violation of Bayer Pharma AG's rights provided in the Eighth and Fourteenth Amendments of the United States Constitution and in Article I, Sections 13 and 19 of the Texas Constitution.  Any award of punitive damages is also excessive under those constitutional provisions to the extent that it does not bear a reasonable relation to the injury, harm, and damages actually suffered by the Plaintiff.

69.     Any judgment imposing punitive damages would violate the open courts provision of the Texas Constitution, the supremacy clause of the United States Constitution (Article VI), the prohibition against ex post facto and retroactive laws in Article I, Section 16 of the Texas Constitution, and the separation of powers doctrine embodied in the structure of the United States Constitution and in Article II, Section 1 of the Texas Constitution.

70.     To the extent that Texas law permits punishment to be measured by the net worth or financial status of Bayer Pharma AG and imposes greater punishment on defendants with larger net worth and/or engaged in substantial interstate commerce, any judgment awarding punitive damages would be unconstitutional insofar as Texas law: permits arbitrary, coercive,

capricious and fundamentally unfair punishments; allows bias and prejudice to infect verdicts imposing punishment; does not significantly constrain a jury's or court's discretion in assessing and/or reviewing exemplary damages; does not meaningfully protect against excessive punitive damages awards; does not ensure reasonable proportionality between punitive damages awarded and legitimate state objectives for such damages; and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Texas and federal constitutions, as well as the Commerce Clause of the United States Constitution.

71.     Any award of punitive damages based on anything other than Bayer Pharma AG's conduct as alleged in Plaintiff's Complaint would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the due process provisions of the Texas Constitution, and the common law and public policies of the State of Texas.  Any other basis for awarding punitive damages in this case would not protect Bayer Pharma AG against impermissible multiple punishment for the same wrong.

72.     To the extent that Plaintiff's Complaint seeks recovery of punitive damages, it violates Bayer Pharma AG's rights to equal protection as provided in Article I, Section 3 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution.

73.     To the extent that Plaintiff's Complaint seeks recovery of punitive damages, it also violates Bayer Pharma AG's rights to contract, as provided in Article I, Section 16 of the Texas Constitution and Article I, Section 10 of the United States Constitution.

74.     Plaintiff's plea for punitive damages violates the Supremacy Clause of the United States Constitution (Article I, Section 10, Clause 1) and Article I, Section 16 of the Texas Constitution.

75.     Plaintiff's plea for punitive damages violates the separation of powers doctrine embodied in Article VI of the United States Constitution and Article I, Section 1 of the Texas Constitution.

76.     Imposition of punitive or exemplary damages violates the Sixth Amendment of the United States Constitution because Bayer Pharma AG is not informed of the nature and cause of the accusation against it; thus, the allegations are void for vagueness.

77.     Plaintiff's claims for punitive damages cannot be sustained to the extent that the damages sought are not subject to a predetermined limit (such as a maximum multiple of compensatory damages or a maximum amount) on the amount of punitive damages that a jury may impose.  Such an unrestricted award would violate Bayer Pharma AG's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution, the Texas Constitution, and the common law and public policies of the State of Texas.

78.     Any judgment awarding exemplary damages must be limited in accordance with Texas Civil Practice & Remedies Code § 41.008.  Bayer Pharma AG asserts all defenses and limitations on punitive damages contained in Texas Civil Practice & Remedies Code Chapter 41.  Bayer Pharma AG also asserts that any judgment awarding exemplary damages may not exceed double the amount (if any) gained by Bayer Pharma AG or caused by it to be lost or damaged, whichever is greater.  To the extent that Chapter 41 of the Texas Civil Practice and Remedies Code authorizes greater punishments, it is in conflict with Section 12.51(c) of the Texas Penal Code and also violates Bayer Pharma AG's constitutional rights to due process and the constitutional prohibitions against excessive fines.  To the extent that Chapter 41 authorizes jury consideration of (and judicial punishment based on) conduct that occurred in other states, it is unconstitutional not only under *BMW of North America v. Gore*, *State Farm v. Campbell*, *Philip*

*Morris USA v. Williams*, and *Exxon Shipping Co. v. Baker*, but also under the Texas Supreme

Court's analysis in *Coca Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 679-688 (Tex.

2006).

79.     To the extent that Texas Civil Practice & Remedies Code § 41.008 does not

apply to limit the amount of punitive damages, then the amount of punitive damages must be

limited in accordance with Bayer Pharma AG's due process rights guaranteed by the Fourteenth

Amendment to the United States Constitution and by Section 19 of Article I of the Texas

Constitution, and the amount of punitive damages must bear a reasonable relationship to

compensatory damages.

80.     Any claims for punitive damages against Bayer Pharma AG cannot be sustained

because any award of punitive damages under Texas law without bifurcating the trial as to all

punitive damages issues would violate Bayer Pharma AG's due process rights guaranteed by the

Fourteenth Amendment to the United States Constitution and by Section 19 of Article I of the

Texas Constitution.

81.     Bayer Pharma AG adopts and incorporates by reference all defenses pleaded by

other defendants except to the extent that they are inconsistent with Bayer Pharma AG's defenses

pleaded in this Answer.

**WHEREFORE**, Bayer Pharma AG requests that Plaintiff's Complaint be dismissed with

prejudice, that judgment be entered in favor of Bayer Pharma AG and against Plaintiff, and that

Bayer Pharma AG be awarded the costs of this action, together with such other and further relief

as may be appropriate.

## JURY DEMAND

Bayer Pharma AG hereby demands a trial by jury on all issues so triable.

<div style="margin-left: 40%">

*s/ Terry Lueckenhoff*
Terry Lueckenhoff, Bar #27810MO
John E. Galvin, IL Bar #06205935
Fox Galvin, LLC
One S. Memorial Drive, 12th Floor
St. Louis, MO  63102
314-588-7000
314-588-1965 (Facsimile)
tlueckenhoff@foxgalvin.com
jgalvin@foxgalvin.com


*s/ Adam Hoeflich (w/ consent)*
Adam Hoeflich, IL Bar #06209163
Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard Street, Suite 300
Chicago, IL  60654
312-494-4400
312-494-4440 (Facsimile)
adam.hoeflich@bartlit-beck.com

*Attorneys for Defendant Bayer Pharma AG,
formerly known as Bayer Schering Pharma AG*

</div>

Dated:  September 12, 2011


## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

<div style="margin-left: 40%">

*s/ Terry Lueckenhoff*

</div>